THE STATE, DEFENDANT IN ERROR, v. HARWOOD FISH, PLAINTIFF IN ERROR.

Argued July 3, 1917—Decided November 19, 1917.

1. A communication relating to the fitness of a candidate for elective public office, made in good faith by one elector to other electors, for the purpose of enabling them to judge as to the propriety of voting for the candidate, is within the doctrine of qualified privilege.

2. On an indictment for libel in informing the electorate of supposed facts concerning the previous record of the candidate in another public capacity, the defendant is not required to prove both the truth and the *bona fides* of the communication.

---

On error to the Supreme Court, whose opinion is reported in 90 *N. J. L.* 17.

For the plaintiff in error, *Codding & Oliver*.

For the defendant in error, *Alfred A. Stein*, prosecutor of the pleas.

The opinion of the court was delivered by

PARKER, J. The plaintiff in error was convicted in the Union Quarter Sessions of criminal libel in circulating among the electors of Union county a printed paper containing statements which on their face were defamatory of one Johnson, at that time a candidate for the office of chosen freeholder, but so far as the case shows, not at that time the incumbent of any public office. The circular contained a number of statements about Johnson, but the only one presented by the indictment related, according to the proofs in the case, to Johnson's conduct as a member of the grand jury of the county some four years previously. It read as follows:

"As a member of a grand jury he succeeded in protecting the biggest swindler to my mind that ever struck the county, and although I understand an indictment was voted against his friend, for some unexplained reason it was never handed in." The innuendo in the indictment was that Johnson, while acting as a member of the grand jury, had corruptly performed his duty and had obstructed and defeated the due administration of law and justice of this state and had used his said office as one of the members of said grand inquest to protect and shield from lawful prosecution a person charged with a criminal offence under the laws of the State of New Jersey.

The Supreme Court, in affirming the conviction, seems to have considered the situation to have been the publication of defamatory matter concerning the incumbent of a public office, which was not the case. As already pointed out, Johnson was a private citizen seeking office, and in the case of a candidate for office, certain rules of privilege apply which may not be applicable when the person defamed is not a candidate for, but the incumbent of a public office, as in *Benton v. State*, 59 *N. J. L.* 551.

Our present concern is with the right of an elector to discuss the fitness of candidates for elective office. The rule of qualified privilege, as laid down by this court in the leading case of *King* v. *Patterson,* 49 *N. J. L.* 417 (at *p.* 422), and adopted from the English cases, is that a communication *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it may contain criminatory matter which, without this privilege, would be slanderous or libelous and actionable.

The applicability of this rule to cases of candidates for public office is recognized by reliable authority. Mr. Bishop goes so far as to hold that newspaper publication of information concerning the fitness of a candidate is privileged. 2 *New Crim. L.* § 937 (5). The same doctrine is stated *obiter* in *King* v. *Patterson, supra* (at *p.* 420). We are not now required to go so far as this, because the circular in question is not charged to have been sent to, or its contents communicated to any but qualified voters, whose suffrages Johnson was seeking. Even where publication in the public prints was held beyond the bounds of the privilege, it was said that a restriction to the appointing power (in that case the common council) would have conferred the privilege. *Hunt* v. *Bennett,* 19 *N. Y.* 173, 175. *Towns. Sl. & L.,* § 247. In *King* v. *Patterson, supra,* the publication of an erroneous statement of plaintiff's financial standing was held unprivileged because communicated to clients of defendant having no interest therein. Within the limits marked out by the proper application of that decision, and which in the case at bar were not overstepped, the communication was privileged, if it was made to appear that it was made with an honest belief in its truth. *Fahr* v. *Hayes,* 50 *N. J. L.* 275. We think, therefore, that the Supreme Court erred in saying that no matter what defendant's motives were, or what induced his action, he was guilty if he circulated the paper and it contained a libelous and untruthful charge. So to hold is in effect to say that when a former official is a candidate for

election to public office, anyone desiring to inform the electors as to his fitness must do so at the peril of a conviction for criminal libel in case of any error as to the facts. We do not so understand the law.

The defence of qualified privilege raised the issues of good faith and malice; and in respect of these the defendant was injured by rulings of the trial court, both upon evidence, and as to the charge to the jury. Defendant sought to show that he had acquired the information touching Johnson's acts as a grand juror in such a way as to justify him in believing it and circulating it as he did, viz., that he had been informed by a man who was a witness before the grand jury at the time. This was excluded. The Supreme Court properly said that the ground of exclusion in the trial court was erroneous but supported the ruling on the theory that there was no excuse or defence for making an untruthful charge— a proposition already discussed.

Defendant also was not allowed to put in evidence to prove the truth of other allegations in the circular. He was entitled to do so on the theory that as the whole circular was in evidence, and his malice or want of malice in publishing it was a matter in issue, the other matters contained therein might be evidential of malice unless proved true or explained. Furthermore, the trial court charged that even if the matter was privileged it must be true. The language of the charge was as follows:

"The defendant insists that the publication was a privileged one. And that, under the circumstances he cannot be held to answer for it. A person is conditionally privileged to communicate to his fellow citizens what is of public interest, and conducive to public good, even when the publication proves injurious to another, but then he must not be swayed by malice, and the publication must be true. Therefore, the jury, under the law, are required to determine whether the language attributed to the defendant and set forth in the indictment is libelous; whether the defendant has shown its truth, and whether it was published by the defendant with good motives and for justifiable ends."

As the truth of the words is ordinarily a complete defence, and the doctrine of privilege rests usually, if not always, on the assumption that the words were untrue but excused by the occasion and the circumstances, the error of this instruction seems plain.

Finally, the trial court gave its assent to the proposition stated by the prosecutor that "this circular, even though that never bore the signature of anybody, if we show it was sent out by Mr. Fish it makes him guilty of libel."

"The Court: Certainly."

The Supreme Court conceded the erroneous character of this statement, but said its harmfulness was "probably neutralized by the charge of the court." This we doubt. The Supreme Court went on to say that it was unavailable in error for lack of any exception. On our examination of the record we find the exception was prayed and sealed. The trial court refused at the time to let the stenographer read back so as to indicate the matter objected to, on the ground that it would interrupt the prosecutor. Counsel then announced his prayer for exception, and a bill of exceptions embracing this point was sealed at the conclusion of the case. Counsel did all that he could, without disrespect to the court, to call the judge's attention to the error. We consider that exception was legally entered; also that the error prejudiced the defendant in maintaining his defence upon the merits. Criminal Procedure act, section 136.

The judgments of the Supreme Court and of the Union Quarter Sessions will be reversed, that a *venire de novo* issue.

*For affirmance*—THE CHANCELLOR, HEPPENHEIMER, WILLIAMS, JJ. 3.

*For reversal*—SWAYZE, PARKER, BERGEN, MINTURN, KALISCH, WHITE, JJ. 6.