**In the Matter of Anthony RUSSO, Jr. Witness Before the Grand Jury.**

**Misc. No. 2832.**

United States District Court,
C. D. California.

Nov. 17, 1971.

565

Robert C. Mardian, Dept. of Justice, Asst. Atty. Gen., Internal Security Div'n, Washington, D. C., David R. Nissen, Atty., Dept. of Justice, Los Angeles, Cal., for the United States.

John K. Van De Kamp, Federal Public Defender, Michael P. Balaban, First Asst. Deputy Federal Public Defender, Los Angeles, Cal., for defendant.

## MEMORANDUM OPINION AND ORDER

FERGUSON, District Judge.

■ The issue presented by this proceeding is whether the court has the power to purge a grand jury witness of civil contempt of court upon his promise to testify upon the condition that he be furnished a transcript of his testimony.

The contempt proceedings involving the witness are reported in Anthony Russo, Jr. v. United States, 448 F.2d 369 (9th Cir. 1971). In summary:

(1) The government began an investigation and presented evidence before a grand jury of this district in regard to possible violations of Title 18 of the United States Code.

(2) As a result of those investigations, Daniel Ellsberg was indicted relative to documents pertaining to the involvement of the United States in Southeast Asia, which documents have been referred to as the Pentagon Papers. *See* New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).

(3) On June 23, 1971, Anthony Russo, Jr. was subpoenaed to appear and testify before the grand jury. He refused, claiming the privilege against self-incrimination. The government then filed an application with the court to grant him immunity pursuant to 18 U.S.C. § 2514.

(4) The court granted immunity, but Mr. Russo nevertheless refused to testify. He was then brought before the court and ordered to answer the questions the jury had asked. When he refused, the court adjudged him in civil contempt, and committed him to the custody of the Attorney General until such time as he purged himself of that contempt.

(5) The order of contempt was affirmed by the Court of Appeals for the Ninth Circuit on August 17, 1971. Russo v. United States, *supra*. He was then committed to custody.

(6) On October 1, 1971, Mr. Russo filed a motion for an order (a) to require the government to record and transcribe all matters occurring before the grand jury while he was before it; (b) to require the government to furnish him with a copy of the transcript of his testimony; and (c) to prohibit the government from taking any action against him on account of any disclosures the witness may make regarding any matters which may occur in his presence before the grand jury.

(7) At the conclusion of the hearing, the court ordered that conditioned upon the government's furnishing Mr. Russo with a copy of his testimony, he will have purged himself of contempt of court if he appeared before the grand jury on October 18, 1971, and answered all questions put to him.

(8) On October 18, 1971, the witness appeared before the grand jury ready to answer questions. However, the attorney for the Department of Justice informed him that the government would not furnish him with a transcript of his testimony.

(9) The parties then appeared before the court and the government moved the court to vacate the condition that a copy of the transcript of the witness' testimony be furnished to him.

The government's request is, in effect, a motion for a finding that the witness has not purged himself of civil contempt of court. The motion is denied and the court finds that Mr. Russo has purged himself.

The motion raises two questions. The first is the power and propriety of this court to require that the testimony of Mr. Russo be recorded and transcribed. The second is the power to purge the witness of civil contempt of court by accepting his promise to testify if he is furnished a transcript of his testimony.

■ In regard to the first question, Rule 6(d) of the Federal Rules of Criminal Procedure states that "for the pur-

pose of taking evidence, a stenographer or operator of a recording device may be present while the grand jury is in session", except while the jury is deliberating or voting. That rule along with Rule 6(e), relating to disclosure of matters occurring before the grand jury, unquestionably empower this court to require all or any part of grand jury proceedings to be recorded and transcribed, with the exception of jury deliberations and voting. *See* United States v. Thoresen, 428 F.2d 654 (9th Cir. 1970); Herzog v. United States, 226 F.2d 561, 566 (9th Cir. 1955), cert. denied, 352 U.S. 844, 77 S.Ct. 54, 1 L.Ed.2d 59 (1956).

█ The rule in the Ninth Circuit is that the recording or transcribing of grand jury testimony is permissible, not mandatory. United States v. Thoresen, *supra*; Loux v. United States, 389 F.2d 911, 916 (9 Cir. 1968). Because the testimony before a grand jury may have a substantial effect upon the rights and interests of those who appear before it and those indicted by it, this rule has come under heavy attack from many courts and commentators who contend that the recording of grand jury proceedings should be made mandatory. *See, e. g.,* ABA Special Committee on Federal Rules of Procedure, 38 F.R.D. 95, 106; 8 J. Moore, Federal Practice ¶ 6.- 02[2] at 11 (2nd ed. 1970); United States v. Gramolini, 301 F.Supp. 39 (D. R.I.1969). While no circuit has yet gone this far, several have held that the better procedure is to record and transcribe grand jury testimony. United States v. Aloisio, 440 F.2d 705, 708 (7th Cir. 1971) (appeal pending); United States v. Hensley, 374 F.2d 341, 352 (6th Cir. 1967), cert. denied, 388 U.S. 923, 87 S.Ct. 2139, 18 L.Ed.2d 1373, reh. denied, 389 U.S. 891, 88 S.Ct. 25, 19 L.Ed.2d 210; United States v. Cianchetti, 315 F.2d 584, 591 (2nd Cir. 1963). This circuit recently observed:

"Where a defendant, anticipating future grand jury proceedings involving himself, gives notice in advance that he will seek a transcript of the proceedings if an indictment is returned and offers to pay the expense of having a reporter in attendance or shows inability to pay, a sound exercise of discretion would ordinarily call for the granting of a motion that a reporter be in attendance." United States v. Thoresen, *supra*, 428 F.2d at 666.

Although *Thoresen* referred to a request by a "defendant" that the grand jury proceedings be recorded, the holding cannot be limited in that regard. In that case, the first indictment returned against the defendants was dismissed when the statute upon which a portion of the indictment was based was held unconstitutional by the Supreme Court. Anticipating further grand jury proceedings, the defendants moved the court for an order compelling the presence of a court reporter at any subsequent grand jury proceedings involving them. The district court's denial of this motion prompted the above-quoted comment in the circuit court.

The defendants in *Thoresen*, therefore, were in the unique situation of being substantially certain that they would be the subject of future grand jury proceedings and that they would be indicted. It was in this sense that the circuit court referred to them as "defendants". In the instant case, Mr. Russo is not a defendant; indeed, he has been granted immunity. Nevertheless, his activities and those of his associates, are under scrutiny by the grand jury. It is impossible at this point in the proceedings to be certain what Mr. Russo's testimony may reveal, what further information this grand jury may discover, or what effect these proceedings may ultimately have upon the rights and interests of Mr. Russo. It would be folly to assume that his substantial rights may not be jeopardized by a subsequent turn of events. The grand jury in question is investigating a wide range of activity, and its inquiries are being coordinated with those of other grand juries around

the country. The record suggests that the government has undertaken a very broad investigation without knowing how long it may extend. It is essential, therefore, that the record of the jury be preserved. For these reasons, this court holds that Mr. Russo has as much interest in a recording of his grand jury testimony as did the defendants in *Thoresen*. Although Mr. Russo has not offered to pay the expense of having a reporter in attendance, or to pay for the transcript, the government has not made his ability to pay an issue. If it subsequently becomes an issue, the matter can be resolved in appropriate proceedings.

Therefore, Mr. Russo's motion that a reporter be present when he testifies is entirely proper, and this court hereby reaffirms its prior order granting that motion. Since the government states that it intends to have a reporter present in any case, this order certainly places no additional burden on it.

The government contends that providing a witness with a transcript of his testimony will invade the secrecy of grand jury proceedings and diminish the effectiveness of the grand jury as an institution. In order to assess this argument, it is necessary to examine the history of the grand jury and its traditions of secrecy.

The institution of the grand jury is deeply rooted in English history. Many authorities regard the Assize of Clarendon, issued by Henry II in 1166, as the origin of the modern criminal grand jury. *See, e. g.*, 1 Holdsworth, A History of English Law 312–27 (6th ed. 1938); 1 Stephen, A History of the Criminal Law of England 184–86, 250–58 (1883). That decree provided for a body of twelve men in each county, to be summoned by the Crown, whose function was to report to the King's officials persons who, according to public knowledge, were suspected of crimes. At its inception, therefore, the grand jury functioned solely to augment the centralized power of the Crown

by acting as public prosecutor to ferret out crime in the counties.

As the grand jury became an established institution, it gradually developed independence of action from the Crown. This was accomplished by enclosing its proceedings in a veil of secrecy which the Crown was unable to penetrate. The body adopted the practice of hearing witnesses in private, rather than in open court. Representatives of the Crown were not permitted in the room while the jury examined the witnesses and deliberated. Simultaneously, the custom of the Crown's judges to examine the jurors on their findings was discontinued. *See* Edwards, The Grand Jury (1906). The jurors themselves swore an oath of secrecy which contained no reservation in favor of the government. They were enjoined "the king's counsel, your fellows, and your own, you shall keep secret". 8 Wigmore, Evidence § 2360, at 728 (McNaughton rev. 1961).

The true independence of the grand jury, made possible by the institution of secrecy, was realized in 1681 in the Trial of Stephen College, 8 How.St.Tr. 549, 550 (1681), and the Earl of Shaftesbury's Trial, 8 How.St.Tr. 759, 771–74 (1681). Each of these men was accused by the Crown of high treason. At the insistence of the King's counsel, the grand juries were required to hear the witnesses in open court. After doing so, the jury in each case demanded and was granted the opportunity to examine the witnesses again in private and to deliberate in private. In each case the jury then refused to indict. Edwards, *supra* at 28–30. These two cases are celebrated as establishing the grand jury as a bulwark against the oppression and despotism of the Crown.

Thus, it is important to note that the common law concept of grand jury secrecy developed from a need to protect the jurors and the accused from the tyranny of the Crown. Secrecy insulated the jurors from the pressures of the

Crown and permitted the grand jury to guard the people against the oppressive power of autocratic government.

The grand jury was brought to this country without significant change. The experience under British rule instilled in the colonists a healthy distrust of the power of centralized government. Consequently, they provided in the Fifth Amendment that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury". This provision was felt necessary to secure the liberties of the citizens against arbitrary encroachment by the government. Ex parte Bain, 121 U.S. 1, 12, 7 S.Ct. 781, 30 L.Ed. 849 (1887); Hurtado v. California, 110 U.S. 516, 538–558, 4 S.Ct. 111, 28 L.Ed. 232 (1884) (dissenting opinion). Here too, secrecy was found necessary to this function. The most celebrated example of grand jury independence in this country is the case of *Peter Zenger* in 1734. In that case, two New York grand juries, resisting heavy pressure by the colonial governor, refused to return an indictment of criminal libel for an attack upon the colonial governor. Note, The Grand Jury as an Investigatory Body, 74 Harv.L.Rev. 590, 590–91 (1961).

Over the years, as fear of the oppressive power of the government has subsided, the government prosecutor has regained substantial influence over the grand jury and, consequently, that institution has lost much of its former independence. *See* 8 J. Moore, Federal Practice ¶ 6.02[1]. The grand jury now relies upon the prosecutor to initiate and prepare criminal cases and investigations which come before it. The government attorney is present while the jury hears testimony; he calls and questions the witnesses and he draws the indictment. The only remnant of secrecy with respect to the government which adheres today is the practice of conducting the actual deliberations and voting of the jury in private. However, the prosecutor's influence may be felt even then. United States v. Gramolini, *supra*, 301 F.Supp. at 41.

In addition to permitting the grand jury a measure of independence, the institution of grand jury secrecy serves other purposes which were propounded at least as early as the Earl of Shaftesbury's Trial, *supra*, in 1681. See 8 Wigmore, Evidence § 2360, at 729. Formulated at a time when the grand jury was struggling to free itself from domination by the Crown, one may speculate whether these justifications were designed to obscure the real purpose of secrecy. Whatever may have been their original motivation, the following justifications for grand jury secrecy are now generally recognized by the courts:

(1) The grand jurors themselves are to be free from the apprehension that their opinions and votes may be subsequently disclosed by compulsion.

(2) The complainants and the witnesses summoned are to be free from the apprehension that their testimony may be subsequently disclosed by compulsion, and this in order that the state may secure willing witnesses.

(3) The guilty accused is not to be provided with such clues as will enable him to flee from arrest or to suborn false testimony or tamper with witnesses.

(4) The innocent accused, who is charged by complaint before the jury but is exonerated by their refusal to indict, is entitled to be protected from the compulsory disclosure of the fact that he has been groundlessly accused. 8 Wigmore, Evidence § 2360, at 734–35. *See also* United States v. Proctor & Gamble Co., 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

▮ The question then is the extent to which providing a witness with a transcript of his own grand jury testimony would be inconsistent with valid reasons for secrecy. In approaching this question, it must be remembered that the

policy of grand jury secrecy should be maintained to the full extent necessary to fulfill the ends of justice, and no further. Atwell v. United States, 162 F. 97, 100 (4th Cir. 1908).

Unlike the jurors themselves, witnesses before grand juries were not sworn to secrecy at common law, but were bound to refrain from disclosure. Regina v. Hughes, 1 Car. & K. 519, 174 Eng.Rep. 919 (N.P.1844); 1 J. Chitty, The Criminal Law 317 (5th Am. ed. 1847). The rule in this country is not uniform. In 1946, when the Federal Rules of Criminal Procedure were adopted, only two states, Missouri and Texas, required by statute an oath of secrecy of witnesses. Several states required such an oath as a matter of practice, while still others imposed no obligation of secrecy upon witnesses. *Compare* People v. Naughton, 38 How.Prac. 430 (N.Y. 1870) and State v. Fish, 90 N.J.L. 17, 100 A. 181 (1917), rev'd on other grounds, 91 N.J.L. 228, 102 A. 378 (no obligation of secrecy), with State v. Kemp, 124 Conn. 639, 1 A.2d 761 (1938) (requiring oath of secrecy). In the federal courts, no act of Congress imposed an obligation of secrecy on grand jury witnesses and the majority of districts required no oath of secrecy. However, in approximately 33 of the 85 district courts at that time witnesses were required to take such an oath. *See* Federal Rules of Criminal Procedure, Second Preliminary Draft, Note to Rule 6 (1944); *see also* Goodman v. United States, 108 F.2d 516 (9th Cir. 1939).

The Advisory Committee to the Supreme Court, which drafted the Federal Rules of Criminal Procedure, considered the justifications for imposing secrecy upon grand jury witnesses and determined that such secrecy was not necessary. As adopted in 1946, Rule 6(e) read in pertinent part:

"(e) Secrecy of Proceedings and Disclosure. Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter or stenographer may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule."

The Committee Notes to Rule 6(e) state:

"2. The rule does not impose any obligation of secrecy on witnesses. The existing practice on this point varies among the districts. The seal of secrecy on witnesses seems an unnecessary hardship and may lead to injustice if a witness is not permitted to make a disclosure to counsel or to an associate."

■ Witnesses before all federal grand juries, therefore, have been free since 1946 to disclose what transpired during their presence in the grand jury room. *See* In the Matter of Petition for Disclosure of Evidence before October, 1959 Grand Jury, 184 F.Supp. 38 (E.D. Va.1960); In the Matter of Hearings before Committee on Banking and Currency of the United States Senate, 19 F.R.D. 410 (N.D.Ill.1956), rev'd on other grounds, 245 F.2d 667 (7th Cir. 1957). *But see* United States v. Smyth, 104 F. Supp. 279, 280 n. 5 (N.D.Cal.1952); United States v. Owen, 11 F.R.D. 371, 373 (W.D.Mo.1951). There is no evidence that this breach of secrecy has diminished the effectiveness of the grand jury system or adversely affected the ability of the government to investigate crime and bring offenders to justice. Rule 6(e) has been reexamined as recently as 1966. In that year the rule was amended by adding "the operator of a recording device" and "any typist who

transcribes recorded testimony" to the list of persons bound by the obligation of secrecy. The fact that it was not felt necessary so to bind witnesses, after twenty years' experience without such an obligation, is further testimony to the success of the rule.

The absence of criticism of Rule 6(e) is easily explained. An examination of the justifications for the policy of grand jury secrecy demonstrates that requiring secrecy of witnesses would serve no purpose. Of the justifications hereinbefore quoted, the first is inapposite. Permitting a witness to disclose his testimony does not interfere with the jurors' ability to deliberate and vote in secrecy. The second justification, that secrecy frees the witness from the apprehension that his testimony may be disclosed and encourages full disclosure by the witness, is most important. Professor Wigmore contends that the nondisclosure of a witness' testimony is a privilege of the witness himself. 8 Wigmore, Evidence § 2362. The privilege is not the grand juror's "for he is merely an indifferent mouthpiece of the disclosure"; nor is it the government's, for "the state's interest is merely the motive for constituting the privilege". "[T]he *privilege*", he concludes, "must therefore be *that of the witness,* and rests upon his consent." Wigmore, *s⋅pra* at 736. Rule 6(e) is entirely consistent with this position. It permits the witness—and only the witness—to disclose the content of his testimony, at least until an indictment has issued or justice otherwise requires disclosure.

The third justification is that secrecy will prevent the guilty accused from fleeing before an indictment has issued, suborning false testimony or tampering with witnesses. Persuasive though this argument may initially appear, it is of little moment within the framework of the issues presented in this proceeding. As a witness may disclose all he knows anyway, furnishing him with an accurate transcript of his testimony cannot possibly affect the justification. The last justification is perhaps hardest to dispel, for the protection of the innocent accused is the cornerstone of our system of criminal justice. However, this court must infer from the absence of criticism of Rule 6(e) over its twenty-five year history that the innocent accused has not suffered under this rule. In large measure, this is undoubtedly attributable to the effectiveness of the government's investigatory process and to the tremendous influence the government prosecutor exerts over the grand jury. In recent history, federal grand juries have seldom, if ever, refused to indict.

A witness before a grand jury, then, is not presently bound to secrecy in any regard. This court can conceive of no reason why furnishing a witness a written transcript of his testimony should interfere with the valid functions of the grand jury any more than does the existing practice. The provision of a transcript does not weigh differently on the justifications for secrecy than the present rule. In addition, providing a transcript will further the interests of justice and benefit the grand jury and the witness. As the Advisory Committee noted, every witness is entitled to relate the proceedings to his attorney. Indeed, this is essential to safeguard the witness' rights and interests. A written transcript will insure that the attorney is provided an accurate record of the proceedings. Further, the existence of a written transcript would minimize the possibility of the witness' publicizing false information regarding the grand jury proceedings, a possibility which bothered government counsel in this case.

■ In addition, a review of a written transcript would give the witness and his attorney or associate an opportunity to correct errors in the transcription or inadvertent mistakes in the testimony itself. Any attorney who has ever undertaken the laborious process of deposing witnesses knows how errors and mistakes creep into the reporter's tran-

script. Any trial judge who has had to determine motions to correct transcripts knows that mistakes are made and how vitally important it is that they be corrected immediately when the testimony is still fresh in the minds of the court, counsel and witnesses. A witness who has been granted immunity is still subject to perjury, and in such a prosecution willingness to correct a misstatement is relevant to the issue of intent. United States v. Lococo, 450 F.2d 1196 n. 2 (9th Cir. Sept. 27, 1971). The need of a witness for the transcript of his testimony before a grand jury, therefore, is real and founded upon a pragmatic regard for his protection. In short, providing the witness with a written transcript shortly after he testifies will insure an accurate record of the proceedings and will maximize the usefulness of the witness' testimony.

■ It is important to note that providing a witness a transcript does not force him to divulge the contents of his testimony. Under existing practice, the witness may voluntarily disclose the substance of his testimony to whomever he chooses—his attorney, an associate, the person under investigation, or the news media. On the other hand, he need make no such disclosure if he so prefers. The courts will not require such disclosure absent a showing of "compelling necessity". Arlington Glass Co. v. Pittsburgh Plate Glass Company, 24 F.R.D. 50, 52 (N.D.Ill.1959). The availability of a transcript does not affect these options. The witness is free to keep the transcript confidential or reveal it.

It is the conclusion of this court, therefore, that furnishing a grand jury witness a transcript of his testimony shortly after his appearance is not inconsistent with valid reasons for grand jury secrecy and will not diminish the effectiveness of the grand jury system or interfere with governmental efforts to investigate crime.

The government next contends that it is improper for this court to order that a transcript be provided Mr. Russo because the disclosure is not "preliminarily to or in connection with a judicial proceeding", as provided in Rule 6(e). The government has misconstrued the order of the court. The court has not ordered the government to furnish the witness a transcript. The order under consideration merely purged Mr. Russo of civil contempt. Therefore, it is not necessary in the context of this case to determine whether a grand jury witness is involved in a "judicial proceeding".

■ The government further argues that a grand jury witness must show a "particularized need" to obtain a transcript. The "particularized need" test was formulated by the Supreme Court in United States v. Proctor & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed. 2d 1077 (1958). In that case the government brought civil suit following a federal grand jury investigation of possible criminal violations of the antitrust laws in which no indictment was returned. The trial court granted a motion by the company for discovery of the entire grand jury transcript. The Supreme Court reversed, holding that the company had not shown sufficient "compelling necessity" or "particularized need" to overcome the "indispensable secrecy of grand jury proceedings". 356 U.S. at 682, 78 S.Ct. at 986. The Court relied heavily upon one justification of the rule of secrecy: "[T]o encourage all witnesses to step forward and testify freely without fear of retaliation." 356 U.S. at 682, 78 S.Ct. at 986. As hereinbefore discussed, providing a witness a transcript of his own testimony is not inconsistent with this policy. Nor is it inconsistent with other justifications there recognized by the Court. *See* United States v. Proctor & Gamble Co., 356 U.S. at 681 n. 6, 78 S.Ct. 983. Accordingly, this court finds that a witness need make no showing of "compelling necessity" or "particularized need" to be entitled to a written transcript of his testimony. He must show only that his testimony

was recorded and a transcript can be made.

This position is not inconsistent with Rules 16(a) (3) of the Federal Rules of Criminal Procedure. Under that rule, which went into effect July 1, 1966, a district court "[u]pon motion of a defendant * * * may * * * permit the defendant to inspect and copy or photograph any relevant * * * (3) recorded testimony of the defendant before a grand jury". Although this rule vests some discretion in the court whether to permit such discovery, it has generally been held that the defendant is entitled as a matter of right to a copy of his own testimony before the grand jury, unless the government affirmatively establishes a substantial reason why it should be withheld. United States v. Manetti, 323 F.Supp. 683, 693 (D.Del.1971); United States v. Projansky, 44 F.R.D. 550, 558 (S.D.N.Y.1968); 8 J. Moore, Federal Practice § 16.05[2]; see also United States v. Cook, 432 F.2d 1093 (7th Cir. 1970), cert denied, 401 U.S. 996, 91 S.Ct. 1224, 28 L.Ed.2d 535 (1971).

█ It cannot be doubted that this court has the power both to hold a witness in contempt for refusing to testify before a grand jury and to purge the witness of contempt when it is satisfied that the dignity of the court has been restored. The grand jury is subject to substantial supervision and control by the court. As the Supreme Court observed in Brown v. United States, 359 U.S. 41, 49, 79 S.Ct. 539, 546, 3 L.Ed.2d 609 (1959):

> "A grand jury is clothed with great independence in many areas, but it remains an appendage of the court, powerless to perform its investigative function without the court's aid, because powerless itself to compel the testimony of witnesses. It is the court's process which summons the witness to attend and give testimony, and it is the court which must compel a witness to testify if, after appearing, he refuses to do so."

█ Congress has not made refusal to testify a specific offense. Refusal to testify is an affront to the court, and it is for the court to determine the punishment and the cure. The power to punish for contempt is inherent in all courts. Ex parte Robinson, 86 U.S. (19 Wall.) 505, 22 L.Ed. 205 (1873). Contempt is punishable because of the necessity of maintaining respect toward the court. The power to punish for contempt is exercised to vindicate the court's dignity for disrespect shown to it or to compel the performance of an order. See Penfield Co. v. Securities & Exchange Commission, 330 U.S. 585, 593, 67 S.Ct. 918, 91 L.Ed. 1117 (1947), reh. denied, 331 U.S. 865, 67 S.Ct. 1301, 91 L.Ed. 1870. The very nature of contempt permits the court the broadest discretion to determine the circumstances in which the interests of the court and the public have been disregarded and to determine what conduct by the contemnor is required to vindicate those interests. As stated by the Supreme Court in McComb v. Jacksonville Paper Co., 336 U.S. 187, 193, 69 S.Ct. 497, 500, 93 L.Ed. 599 (1949): "We are dealing here with the power of a court to grant the relief that is necessary to effect compliance with its decree. The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. They may entail the doing of a variety of acts. * * *" See also Penfield Co. v. Securities & Exchange Commission, supra; Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); Oriel v. Russell, 278 U.S. 358, 364–365, 49 S.Ct. 173, 73 L.Ed. 419 (1929).

In the instant case, Mr. Russo was subpoenaed by the court to testify before the grand jury. He refused to testify and was found in civil contempt for refusing to obey the order of court to answer questions. The court's order was that Mr. Russo would be held in custody until such time as he purged himself of contempt. This court now holds that Mr.

Russo has purged himself of that contempt by his promise to testify before the grand jury conditioned upon being furnished a written transcript of his testimony within thirty-six hours of his appearance. He is held immune from all penalties by reason of refusing to testify as a witness before a grand jury unless the government agrees that it will furnish him a copy of the transcript of his testimony.