**Michael SMITH, Plaintiff,**

v.

**Robert A. BUTTERWORTH, Jr., Attorney General of the State of Florida, and T. Edward Austin, Jr., as State Attorney assigned to the Charlotte County Special Grand Jury, Defendants.**

No. 87–143–CIV–FTM–17.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 2, 1988.

see the Special Grand Jury's investigation, not to reveal his testimony in any manner, because such revelation could result in criminal prosecution.

Smith wants to report and publish a news story or book about activities of the state attorney's office which had become controversial during the year prior to his being subpoenaed. Any report or book would necessarily contain revelations prohibited by Section 905.27, Florida Statutes (1985) ("the Section" or "Section 905.27") because Smith intends to base his account, in part, upon his testimony and experience before the Special Grand Jury. Smith is concerned that, if he publishes any of the questions addressed to him or his answers, he will be criminally prosecuted pursuant to Section 905.27.

Gregg D. Thomas, Tampa, Fla., for plaintiff.

George L. Waas, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendants.

## ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on plaintiff's motion for preliminary injunction, defendants' motion to dismiss or motion for summary judgment, defendants' supplement, and plaintiff's supplement.

FACTS:

Plaintiff Michael Smith ("Smith") is a professional reporter employed by the Punta Gorda Herald, Inc., publisher of the *Charlotte Herald–News*, a newspaper distributed in Charlotte County, Florida. Smith was subpoenaed and did testify before a Charlotte County Special Grand Jury on March 27, 1986.

The Special Grand Jury, which was convened to investigate claims of questionable activities and operations in the Charlotte County state attorney's office and police department, terminated its activity in April of 1986. At the time of his testimony, Smith was warned by members of the staff of T. Edward Austin ("Austin"), who were specially-assigned by the Governor to over-

Smith brings this action seeking declaratory and injunctive relief in order to acquire this Court's judgment that Section 905.27 presents an unconstitutional prior restraint and penal sanction on his First Amendment rights of free speech under the United States Constitution. Smith seeks this relief under 42 U.S.C. § 1983 to prevent the State's enforcement of the Section against him, so that he might pursue his intention to document his story concerning government activities in Charlotte County in recent years.

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–7, (5th Cir.1979), quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. [477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d] at 273.

The Court also said, "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.,* at 477 U.S. p. 322, 106 S.Ct. p. 2553, 91 L.Ed.2d p. 274. The Court is satisfied that no factual disputes remain for resolution at trial. This case presents a purely legal question.

## SCOPE OF JUDICIAL REVIEW

■ The power to declare a law unconstitutional exists only when it is necessary to enforce or protect some constitutional right. *State ex rel. Crim v. Juvenal,* 118 Fla. 487, 159 So. 663 (1935). The Constitution itself must be found to be violated.... If the act does not violate the United States or State Constitution, it must be given effect. *Dutton Phosphate Co. v. Priest,* 67 Fla. 370, 65 So. 282 (1914).

Courts do not have the power to rule upon the policy or wisdom of the law. *Fraternal Order of Police, Metro. Dade County, Lodge No. 6 v. Dep't of State,* 392 So.2d 1296 (Fla.1980). Any questions as to the need or appropriateness of a particular enactment are for the legislature. *Stern v. Miller,* 348 So.2d 303 (Fla.1977).

■ Every law is presumed valid. *Bunnell v. State,* 453 So.2d 808 (Fla.1984). To be defective, the law must be clearly erroneous, arbitrary, and wholly unwarranted. *State v. State Bd. of Education of Florida,* 467 So.2d 294 (Fla.1985). In determining the validity of a statute, if possible, the courts must give it a construction that will uphold the act. *Miami Dolphins, Ltd. v. Metropolitan Dade County,* 394 So.2d 981 (Fla.1981); and, if any doubt exists about the validity of the act, all doubt will be resolved in favor of the constitutionality of the statute. *Falco v. State,* 407 So.2d 203 (Fla.1981).

■ Since there is the presumption in favor of the validity of a statute, the burden of proving that a statute is unconstitutional is upon the party challenging the act. *Peoples Bank of Indian River County v. State, Dep't of Banking & Finance,* 395 So.2d 521 (Fla.1981). The challenging party, who has the burden of proof, has to prove "beyond all reasonable doubt" that the challenged act is in conflict with some designated provision of the Constitution. *Metropolitan Dade County v. Bridges,* 402 So.2d 411 (Fla.1981). In particular, when the legislature makes a determination that the law has a public purpose, the party challenging the determination must show that the legislative determination was so clearly wrong that it was beyond the power of the legislature to act. *State v. Orange County Indus. Development Authority,* 417 So.2d 959 (Fla.1982).

When a court looks at a law to see if the facts support the law, "if any state of fact, known or to be assumed, justifies the law, the court's power of inquiry ends; questions as to the wisdom, need or appropriateness are for the legislature." *Fulford v. Graham,* 418 So.2d 1204, 1205 (Fla. 1st DCA 1982), citing *State v. Bales,* 343 So.2d 9 (Fla.1977).

In determining facial unconstitutionality, the Florida Supreme Court has established the following test:

[T]he vice of constitutional invalidity must inhere in the very terms of the title or body of the act. If this cannot be made to appear from argument deduced from its terms or from matters of which the court can take judicial knowledge, we will not go beyond the face of the act to seek grounds for holding it invalid.

*Crandon v. Hazlett,* 157 Fla. 574, 26 So.2d 638, 643 (1946), quoting *State v. Armstrong,* 127 Fla. 170, 172 So. 861, 862 (1937) (Terrell, J.).

## THE FIRST AMENDMENT

Plaintiff argues that the State of Florida cannot demonstrate a compelling governmental interest in non-disclosure by grand jury witnesses, or that the Section 905.27 is narrowly tailored to further that interest, and no more restrictive than necessary. Plaintiff asserts that the State's permanent and total refusal to allow a witness, compelled by subpoena to testify in a grand jury proceeding, to later speak about his testimony, undermines the basic role of the First Amendment.

The Supreme Court has often enunciated that role:

Fundamental rights comprised within the term liberty are protected by the Federal Constitution from invasion by the States. The right of free speech, the right to teach and the right of assembly are, of course, fundamental rights. These may not be denied or abridged. But, although the rights of free speech and assembly are fundamental, they are not in their nature absolute. Their exercise is subject to restriction, if the particular restriction is required in order to protect the State from destruction or from serious injury, political, economic or moral. That the necessity which is essential to a valid restriction does not exist unless speech would produce, or is intended to produce, a clear and imminent danger of some substantive evil which the State constitutionally may seek to prevent has been settled. See *Schenk v. United States*. [Citation omitted]

Those who won our independence believed that the final end of the State was to make men free to develop their faculties; and that in its government the deliberative forces should prevail over the arbitrary. They valued liberty both as an end and as a means. They believed liberty to be the secret of happiness and courage to be the secret of liberty. They believed that freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth; that without free speech and assembly discussion would be futile; that with them, discussion affords ordinarily adequate protection against the dissemination of noxious doctrine; that the greatest menace to freedom is an inert people; that public discussion is a political duty; and that this should be a fundamental principle of the American government. *Whitney v. California*, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed 1095 (1927).

## THE FIFTH AMENDMENT

The framers of the Constitution also recognized the institution of the grand jury, providing in the Fifth Amendment that no one can be prosecuted for a capital crime unless the grand jury decides that the evidence it has heard requires such prosecution. The grand jury serves the dual function of assuring that where there is probable cause to believe a person has committed a crime, that person will be prosecuted, and of protecting those against whom there is no such evidence from being prosecuted and having to stand trial. The grand jury has broad investigatory powers not only to inquire into violations of criminal law but also into all phases of the civil administration of government.

The institution of the grand jury was recognized in the Magna Carta granted by England's King John in 1215 A.D. In its inception, the grand jury functioned to augment the centralized power of the Crown by acting as a public prosecutor. Gradually, the grand jury developed independence of action from the Crown. This was accomplished by enclosing its proceedings in a veil of secrecy, which insulated the jurors from the pressures of the Crown and permitted it to guard the people against the oppressive power of autocratic government.

Grand jury proceedings have been closed to the public since the 17th century, and records of such proceedings have been kept from the public eye. See Calkins, *Grand Jury Secrecy*, 63 Mich.L.Rev. 455, 457 (1965). The rule of grand jury secrecy was imported into our federal common law and is an integral part of our criminal justice system. See *Costello v. United States*, 350

U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956).

In *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681–682, n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958), the Supreme Court said that the reasons for grand jury secrecy were summarized correctly in *United States v. Rose*, 215 F.2d 617, 628–629 (3rd Cir.1954):

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there is no probability of guilt.

Plaintiff argues that at present the grand jury is no longer independent from the central government and that therefore secrecy no longer serves the same purposes. "The grand jury now relies upon the prosecutor to initiate and prepare criminal cases and investigations which come before it. The government attorney is present while the jury hears testimony; he calls and questions the witnesses and he draws the indictment. The only remnant of secrecy with respect to the government which adheres today is the practice of conducting the actual deliberations and voting of the jury in private." *In re Russo*, 53 F.R.D. 564, 569 (1971).

### THE TENTH AMENDMENT

Florida has made a policy choice that permanent and total non-disclosure of witness testimony strengthens the grand jury system, and enhances the ability of the State to detect and eliminate organized criminal activity by improving the evidence-gathering process. In attempting to resolve the dispute, the Court considered whether the Tenth Amendment provides support for Florida's power to make this policy choice. The Tenth Amendment states that the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States, respectively, or to the people.

In *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), the Supreme Court held that the statutory amendments of the Fair Labor Standards Act exceeded congressional power under the Commerce Clause of the Constitution (Art. I, § 8, cl. 3) because they directly displaced the state's freedom to structure integral operations in areas of traditional governmental functions. In *National League*, the Court said, "Our federal system of government imposes definite limits upon the authority of the States as States by means of the commerce power" [citation omitted]. In *Fry v. United States* [citation omitted] the Court recognized that an express declaration of this limitation is found in the Tenth Amendment:

> While the Tenth Amendment has been characterized as a "truism" stating that 'all is retained which has not been surrendered' [citation omitted], it is not without significance. The Amendment expressly declares the constitutional policy that Congress may not exercise power in a fashion that impairs the States' integrity or their ability to function effectively in a federal system. 421 U.S. 542, 547, n. 7, 44 L.Ed.2d 363, 95 S.Ct. 1792 [1795 n. 7].

In *National League*, Congress through its legislation sought forced relinquishment of important government activities; the amendments displaced state policies regarding the manner in which they will structure the delivery of those governmental services which their citizens require. The Court therein said this was an impermissible interference.

After *National League*, the Supreme Court declined to invalidate a single federal law applicable to the States on the ground that it interferes with their autonomy under the Tenth Amendment. With the Su-

preme Court's decision in *Garcia v. San Antonio Transit Authority* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), which overruled *National League*, the Tenth Amendment has become a "dead letter" in constitutional law. *State of Mich. v. Meese*, 666 F.Supp 974, 977 (E.D.Mich. 1987).

"Subsequent to *Garcia, supra*, it is not clear what standard applies to issues like the one before the Court. *Garcia* seems to have discarded *Usery's* "balancing" test. [Citation omitted]. However, *Garcia* fails to identify or define what affirmative limits the constitutional structure might impose on federal action affecting the States under the Commerce Clause." *State of Mich. v. Meese, supra.* Tenth Amendment analysis has not offered the Court any guidance in resolving the dispute now before it.

## THE GRAND JURY IN FLORIDA

The plaintiff has brought before the Court a case of first impression. Plaintiff wishes to write and speak about the matters which were under investigation by the Charlotte County Special Grand Jury, including the grand jury proceeding itself. He challenges a Florida Statute regulating the judicial proceeding, arguing that it is constitutionally overbroad, and it infringes on Plaintiff's First Amendment rights without serving a compelling governmental interest in the least restrictive manner.

Defendant contends that Plaintiff is seeking not only a constitutional right to publish his testimony, but also to publish anything connected with his testimony and evidence coming to his personal knowledge while before the grand jury, such as questions posed, statements made by grand jurors, discussions between grand jurors and the prosecuting attorney, between the prosecuting attorney and the witness, and anything that took place in the grand jury room relating to testimony and evidence observed or heard by plaintiff.

The Court notes that the Supreme Court has made it clear that the proper functioning of the grand jury system depends upon the secrecy of the grand jury proceedings. *Douglas Oil Co. v. Petrol Stops*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979).

The policy of secrecy must not be broken except where there is a compelling necessity. *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). The Supreme Court has permitted intrusions on other constitutional rights in connection with grand jury proceedings. *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

█ Plaintiff has argued that since one traditional reason for grand jury secrecy, independence from the government, has abated, Florida's non-disclosure state is no longer justified. This Court finds that Florida has articulated a compelling need for continued secrecy in the stated intent of the statute. In addition to strengthening the grand jury system itself, the statute is designed to enhance Florida's ability to detect and eliminate organized criminal activity by improving the evidence-gathering process. On deposition, witnesses for Defendant have described the policies behind Florida's statute. These reasons include the jurors' fear that their identities may somehow be disclosed, with resulting retaliation; impairment of a present investigation because witnesses are coached; and impairment of future investigations because the nature of the investigation is broadcast to future witnesses. There is also testimony that the media has greater access to the state courthouse in that the media may be present in the hall outside the grand jury room, unlike the federal courthouse, inside which cameras are not allowed.

In *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the Supreme Court declined to grant newsmen a testimonial privilege, finding that the investigation of crime by the grand jury implements the fundamental governmental role of securing the safety of the person and property of citizens. The Court found the subpoena power of the grand jury to be essential to its task, and noted that the grand jury plays an important, constitutionally mandated role in fair and effective law enforcement.

Plaintiff has suggested that Florida could fashion a statute applying only to "problem" cases that would overcome any conflict with First Amendment rights. The Court believes this presents severe practical and conceptual difficulties. Almost any case could develop into a "problem" case at any time during the investigation. The Court wonders at what point it could rest assured that all relevant information had been gathered so that the competing interests could be fairly balanced. It is not hard to draw a line around the "easy" case but developing a reliable standard to define cases falling outside that line is fraught with problems, and the consequences of error are extreme.

As the Court stated in *Branzburg:*

At the federal level, Congress has freedom to determine whether a statutory newsman's privilege is necessary and desirable and to fashion standards and rules as narrow or broad as deemed necessary to deal with the evil discerned, and, equally important, to refashion those rules as experience from time to time may dictate. There is also merit in leaving state legislatures free, within First Amendment limits, to fashion their own standards in light of the conditions and problems with respect to the relations between law enforcement officials and press in their own areas. It goes without saying, of course, that we are powerless to bar state courts from responding in their own way and construing their own constitutions so as to recognize a newsman's privilege, either qualified or absolute. *Branzburg,* 408 U.S. at 706, 92 S.Ct. at 2669, 33 L.Ed.2d at 654.

Plaintiff has suggested that Florida draw instruction from the federal experience with witness disclosure. Rule 6(e) of the Federal Rules of Criminal Procedure allows disclosure of witness testimony, and federal courts have concluded that there is no evidence that this breach of secrecy has diminished the effectiveness of the grand jury system or adversely affected the ability of the government to investigate crime and bring offenders to justice. See, *In re Russo,* 53 F.R.D. 564, 570 (D.C.Cal.1971).

The Court notes that the federal rule allowing disclosure of witness testimony is a rule of procedure. Prior to adoption of the rule, the leading case on grand jury secrecy was *Goodman v. United States,* 108 F.2d 516 (9th Cir.1939), wherein two witnesses were adjudged in contempt of court for refusing to take an oath of secrecy. The witnesses contended such an oath would violate constitutional guarantees of freedom of speech, among other rights. The *Goodman* court said:

The contention that the oath violates the right of the witness to freedom of speech is specious. The right is not absolute ... It has never been supposed that grand jurors are deprived of the constitutional right of free speech through the oath of secrecy which they take; and a witness summoned to appear before them is in no better case. Through their participation witnesses occupy a special relationship to the state; for reasons grounded in public policy, as we have seen, the testimony taken in these proceedings is privileged and confidential. Considerations of mere convenience or even downright hardship on the part of the witness do not outweigh the secrecy in respect of grand jury investigations. 108 F.2d at 520.

Prior to the adoption of Rule 6(e), most federal courts required an oath of secrecy of grand jury witnesses. This practice was upheld as "within the discretionary power of the court ... if the court believes the precaution necessary in the investigation of crime." *Goodman,* 108 F.2d at 520. The adoption of Rule 6(e) was not predicated on First Amendment considerations, but on the idea of fairness. The Advisory Committee Notes state "The seal of secrecy seems an unnecessary hardship and may lead to injustice if a witness is not permitted to make a disclosure to counsel or to an associate." See *Note 2 of Advisory Committee Notes to Fed.R.Crim.P. 6(e).* The Florida legislature has made a different choice; it has decided that witness non-disclosure is necessary to preserve the integrity of the grand jury and to effectively fight organized crime. This Court believes that it is equally within the discretion of the

legislature to do so. Because the federal judiciary opted to change its policy does not mean that the previous policy violated the Constitution.

There is no question that the First Amendment functions as a check on legislative power. Important as they are, First Amendment rights are not the only issue in this dispute. What is at stake is where the authority to control the judicial process lies. Plaintiff is requesting that this Court move control of the proceedings from the exclusive control of the judge and pass part of that control to the individual witness. With the rule of witness non-disclosure in place, the judge can be reasonably certain that each juror has received the same information. To allow witness disclosure removes that certainty.

Plaintiff has argued that grand jurors are fulfilling an obligation by participating in the investigatory process, and jurors willingly take an oath of secrecy, whereas the witness who is subpoenaed appears as an involuntary participant. This Court is well aware of the awesome responsibility that falls on the grand juror. The Court does not perceive any difference in status between witnesses and other participants in the judicial process on the basis of willingness to participate. Each participant is called to perform a different function, willing or not. Plaintiffs contend that other participants willingly divest themselves of their First Amendment rights in order to fulfill obligations of employment, but since a witness is compelled to appear, he should retain the right to speak or remain silent, as he chooses. But jurors are citizens too. The Florida legislature has adopted a policy which would protect the safety of its citizens who serve on the grand jury. The Court believes that the legislature has the power and the duty to impose the rules it deems necessary to ensure the integrity of the truth-finding process and, specifically to guard the safety of the jurors themselves. The Court notes that under the present statute, a Court may permit disclosure of grand jury testimony for three reasons: a) To ascertain whether it is consistent with testimony given by the witness before the Court, b) to determine whether the witness is guilty of perjury, and c) to further justice. It appears that there is a statutory procedure in place which would allow a further balancing of interests to take place.

Plaintiff has argued that participation as a witness in grand jury proceedings creates a stigma that is impossible to dispel without the right to speak out to describe that participation. The grand jury system has functioned in secrecy for hundreds of years. It plays an important role in fair and effective law enforcement. This Court does not lightly dismiss damage to an individual's personal reputation, political career or business relationships. Prior to the adoption of Rule 6(e), federal court accepted these hardships as a necessary evil, the price of a functioning system of criminal justice. The Florida legislature continues to accept these hardships for the same reason. In considering the criminal justice system as a whole, the Court concludes that often, stigma continues to attach to accused criminals who have been acquitted and who have the right to speak about their trials. When a witness participates in grand jury proceedings, the reasonable conclusion is that the person knows something relevant, nothing more or less. It is beyond the concern of this Court to attempt to control the public imagination. Further, the Florida Supreme Court has held constitutional Section 905.28(1), permitting repression of certain statements in a grand jury presentment about a person against whom no charges had been voted. *Miami Herald Publishing Co. v. Marko*, 352 So.2d 518 (Fla.1977). That court said:

> In considering whether statements in a 'no indictment' grand jury report can be repressed on the ground that public officials may be exposed to criticism, scorn, or recommendations unfavorable to their reputation, it is essential to bear in mind the context in which the issue arises. Unlike the opportunity for refutation which is available when adverse character or reputational matters are disclosed during the course of a public trial, there is no comparable opportunity to challenge grand jury report disclosures con-

temporaneously with their publication. These matters emerge from a grand jury process which has operated in secrecy, under the guidance of a prosecutor and the supervision of a judge to be sure, but where there has been no right to challenge witnesses or to be represented by counsel. It is possible, then, that the testimony and information presented to a grand jury, on which they must rely and report, is potentially one-sided and inaccurate. Thus, while one charged with the commission of a crime as a result of this process has a full opportunity for public clarification of misleading data and personal vindication through a public trial, no comparable means of vindication exists for one whose character is impugned in a report unaccompanied by an indictment. It is undoubtedly for this reason that the legislature has now afforded an opportunity to prevent the publication of unfavorable material through the repression of matter that is 'improper and unlawful'. 352 So.2d at 520–521.

The Florida Supreme Court has expressed its concern for the reputation of the innocent accused. The Court does not believe that the reputation of a witness should be more protected than the reputation of the target of a grand jury investigation.

The Supreme Court, in *Landmark Communications v. Commonwealth of Virginia*, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978), reversed a newspaper's conviction for publication of an article which accurately reported on pending inquiry by the Virginia Judicial Inquiry and Review Commission. That case addressed the narrow issue of whether the First Amendment permits the criminal punishment of third persons who are strangers to the inquiry, including the news media, for publishing truthful information regarding confidential proceedings before the Commission.

*Landmark Communications* did not consider a constitutional challenge to a State's power to keep the proceedings confidential or to punish participants for a breach of that mandate. This is the issue that now confronts this Court. Plaintiff is asking this Court to open the door to proceedings which have traditionally remained shrouded in secrecy. This is not a trial proceeding, to which there is a constitutional right of access. Nor is there evidence that the grand jury proceeding was conducted in bad faith to deliberately silence a witness, to which a First Amendment challenge would be viable. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). There is no priority in the Bill of Rights that allows this Court to unerringly determine whose rights take precedence in this dispute. The Court is required to choose among competing policies.

Plaintiff has argued that permanent and total witness non-disclosure is not necessary. He contends that the federal experience under Rule 6(e) has shown that the system continues to work even with witness disclosure, and that, therefore, the State cannot meet its burden of justifying an infringement on First Amendment rights furthering a compelling state interest using the least restrictive means. Defendants respond that the legislature has determined that permanent and total nondisclosure is necessary to enhance the integrity of the grand jury system and to effectively fight organized crime in Florida. Defendants contend that the legislature has already balanced the competing interests in choosing its policy of non-disclosure.

The Court believes that independence of mind is as important for the grand jurors as for the witnesses in the truth-gathering process, if not more so. Permanent, total confidentiality allows the necessary independence of mind required for the effective functioning of the grand jury. It allows the juror to be as certain as he possibly can be that his identity will not be revealed, subjecting him to retaliation. This frees the juror to ask searching questions. It produces reliable results because the flow of information into the minds of the jurors is controlled. Each juror receives the same information. There is no media attention during proceedings to possibly distort the jurors' attitudes. There is no opportunity for one witness to coach a later witness.

This Court does not believe that quantitative analysis of the number of indictments obtained answers the question of how much integrity in the grand jury system is enough. The Florida legislature has opted for the maximum possible. The Court believes that it is absolutely within the discretion of the legislature that it make that qualitative analysis of its judicial process. In Florida, jurors are reminded that their "searching eye[s] and ... inquiring mind[s] are an effective deterrent to evil and corruption" and "no officer or agency of the government is above or beyond the reach of the grand jury." One major purpose of the First Amendment is scrutiny of the government. The Court believes that the individual's right to speak is subsumed into the grand jury's broad investigatory powers. Being called as a witness allows the witness to "do" instead of "talk."

The Court believes that this is the exceptional case where a severe infringement on rights under the First Amendment is permissible.

Accordingly, it is

ORDERED that plaintiff's motion for preliminary injunction is denied. It is further

ORDERED that defendants' motion for summary judgment is granted.