UNITED STATES of America

v.

Aldo GRAMOLINI and Charles Doyle Hogan.

No. 7514.

United States District Court
D. Rhode Island.
June 17, 1969.

---

Edward P. Gallogly, U. S. Atty., William J. Gearon, Asst. U. S. Atty., District of R. I., Providence, R. I., for plaintiff.

William L. Parent, Woonsocket, for Aldo Gramolini.

Frank O. Lind, Jr., Woonsocket, for Charles Doyle Hogan.

## OPINION

PETTINE, District Judge.

In April 1968 the federal grand jury was convened. In September 1968 that grand jury returned indictments of one Aldo Gramolini and of one Charles Doyle Hogan for violation of 18 U.S.C. §§ 371 and 657. In simple language, the offense charged by the indictment was conspiracy to wilfully misapply funds of a savings and loan association which were insured by the Federal Savings and Loan Insurance Corporation.

The facts, as set out in the indictment, are that the defendant Hogan, by virtue of his position as an employee of the Roger Williams Savings and Loan Association, wilfully conspired with the defendant Gramolini to pay over $5,000.00 of the Loan Association's funds to two customers of Gramolini, namely, Siegfried and Mary Ann Knekties, in return for a note from the Knekties to the Loan Association. Allegedly the credit applications seeking the funds for home improvement purposes were not truthful, and the defendant Gramolini never intended to and never did, in fact, complete the services for which the funds were sought. Moreover, it is alleged that the defendant Gramolini was to retain a portion of the $5,000.00 and pay over to the Knekties another portion, but that the Knekties' portion would not be used for home improvements. The indictment further alleges that certain overt acts were carried out by the defendants in furtherance of their conspiracy. These acts were (1) that the defendant Gramolini signed an order with the Knekties to make improvements on their home; (2) that the defendant Hogan thereafter approved the disbursement of $5,000.00 from Roger Williams Savings and Loan Association; and (3) that the defendant Hogan received a check of $5,000.00 drawn on Roger Williams Savings and Loan Association.

The two defendants have filed several motions with the court, some of which have been disposed of, some of which have not. The defendants' motions pursuant to Fed.R.Crim.P. 16(a) and 16(b) have been granted. The defendants' motions for discovery of statements made by Siegfried and Mary Ann Knekties to government agents have been denied. The defendants' motions to produce grand jury minutes were reserved and must, of necessity, be denied, since no

such grand jury minutes were kept. Presently pending are the defendants' motions to dismiss the indictment because either (1) grand jury minutes were not kept, or (2) the grand jury heard only hearsay testimony, which testimony derived from a bias and prejudiced source. In connection with the second ground, the record contains the affidavit of the United States Attorney, requested by the court upon initial hearing of the motion to dismiss, that the grand jury was told that "there were matters which might be presented to it solely through the testimony of agents or representatives of the United States of America and it was entitled to request the presence of any and all witnesses who could directly substantiate testimony given by such agents or representatives."

*Grand Jury Minutes*

Rule 6 of the Federal Rules of Criminal Procedure permits but does not require the keeping of grand jury minutes. See Fed.R.Crim.P.. 6(d), 6(e). No court has as yet held that the failure to keep grand jury minutes may be a basis for dismissal of the indictment. See McCaffrey v. United States, 372 F.2d 482 (10th Cir. 1967), United States v. Caruso, 358 F.2d 184 (2nd Cir. 1966), Maestas v. United States, 341 F.2d 493 (10th Cir. 1965). However, several courts have indicated that the keeping of grand jury minutes is the "better practice." See, e. g., United States v. Cianchetti, 315 F.2d 584 (2nd Cir. 1963). And this court has several times in the recent past indicated that the failure to keep grand jury minutes might well be fatal to the prosecution's case. E. g., United States v. Mastroicchio, Indictment No. 7405; United States v. LeFebvre, Indictment No. 7424. Moreover, it is not without significance that the ABA Committee on the Federal Rules, and its Section on Criminal Law have both recommended the mandatory transcription of the grand jury proceedings. See 38 F.R.D. 95 at 106. Finally, I note that the First Circuit Court of Appeals has suggested that the keeping of minutes might well be a wise prosecutional practice although it is not constitutionally required. Schlinsky v. United States, 379 F.2d 735 (1st Cir. 1967). See also State v. DiModica, 40 N.J. 404, 192 A.2d 825 (1963). Professor Cipes has well stated the current situation regarding grand jury minutes:

> There is no requirement that testimony before the grand jury must be transcribed verbatim, although this is acknowledged to be the better practice. Fairness to the defendant would seem to compel a change in the Rule, particularly in view of the increasingly permissive use of minutes for impeachment. The requirement of a record may also prove salutary in controlling overreaching or improper examination of witnesses by the prosecutor.

8 Moore's Federal Practice at paragraph 6.02(2), p. 6–11 (Cipes ed. 1969). To these comments I can add certain thoughts derived from my own experience. In eighteen years of practice as a prosecutor, I presented to both state and federal grand juries hundreds, even thousands of cases, covering every facet of crime, from petty offenses to organized activities of the underworld, from voting frauds to alleged graft and corruption of power-wielding city officials. In not a single major instance were minutes not kept either electronically or manually. Against this background, I unequivocally reject the notion that recordation of grand jury proceedings interferes with the proper functioning of the grand jury. In no way does recordation inhibit the grand jury's investigation. True, recordation restrains certain prosecutorial practices which might, in its absence be used, but that is no reason not to record. Indeed, a sophisticated prosecutor must acknowledge that there develops between a grand jury and the prosecutor with whom the jury is closeted a rapport—a dependency relationship—which can easily be turned into an instrument of influence on grand jury deliberations. Recordation is the

most effective restraint upon such potential abuses. Nor can it be claimed that the cost of recordation is prohibitive; in an electronic age, the cost of recordation must be categorized as miniscule. Indeed, even if a stenographic transcript be kept, the cost is clearly justified by the improved administration of criminal justice. For these many reasons, I rule as a matter of federal criminal procedural law pursuant to Fed.R.Crim.P. 57(b) that it is the law of this case grand jury proceedings should have been transcribed or otherwise equally effectively recorded.

In the instant case, the keeping of grand jury minutes would obviously have materially aided defense counsel in his attempt to ascertain the existence of or extent of the prosecutorial bias and prejudice he alleges existed in the presentation of the case exclusively by hearsay to the grand jury. In the absence of minutes, the defense is forced to conjecture as to what was stated and can only reconstruct the events before the grand jury by an adversarial confrontation, in a preliminary hearing, with the government's witness or by examination of the members of the grand jury. Neither means is as adequate to the task as would the keeping of minutes have been.

However, I am reluctant to dismiss the indictment and to call into question every other pending criminal matter that has come before me. Accordingly, I employ a technique which has been used favorably by other Circuit and District Courts in this area of the law, the technique of applying a rule prospectively only. See Gaither v. United States, 413 F.2d 1061 (D.C.Cir. April 8, 1969), United States v. Arcuri, 282 F.Supp. 347 (E.D.N.Y.1968), 405 F.2d 691 (2nd Cir. 1968). The defendants in the instant case have only demonstrated the appearance of prejudice in that their task in showing the irregularity before the grand jury has been rendered difficult. See Maestas v. United States, 341 F.2d 493 (10th Cir. 1965).

Nevertheless, even recognizing this difficulty, the motion to dismiss is in this respect denied. The reason for the denial of the defendants' motion to dismiss is that to grant it would injure the administration of criminal justice by rendering every presently pending indictment before me dismissable. However, the United States Attorney is hereby on notice that every indictment handed down subsequent to the effective date of this decision is vulnerable if grand jury proceedings in obtaining those indictments are not transcribed or otherwise equally effectively recorded.

*Hearsay and Prejudice Before Grand Jury*

In United States v. Costello, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), the Supreme Court temporarily laid to rest the controversial issue of whether indictments could be based exclusively on hearsay evidence. In *Costello* the Court seemed to choose a rationale intended to avoid dilatoriness in grand jury proceedings. In a concurring opinion, Justice Burton criticized the majority for stating its rationale too broadly and hence inviting prosecutorial practices of questionable validity to be used in subsequent grand jury proceedings. In the twelve years since the decision in *Costello*, the breadth of that rationale has considerably been narrowed by decisions of the lower federal courts, particularly in the Second Circuit where it is now established that the deliberate use of hearsay alone to obtain indictments is unlawful where first-hand testimony was readily and conveniently available to the prosecution. United States v. Arcuri, 282 F.Supp. 347 (E.D.N.Y.1968), 405 F.2d 691 (2nd Cir. 1968). However, the First Circuit has not as yet stated a position with respect to the use of hearsay. And it is clear that the practice in this district has been to use hearsay before the grand jury. Nevertheless, for the reasons stated in the *Arcuri* decision, and the cases therein cited, I am constrained to declare that the deliberate use of hear-

say testimony alone to obtain indictments is a questionable practice which so seriously depreciates the function of the grand jury as a fact investigator and determiner of probable cause as to suggest a watering down of the grand jury contemplated by the Fifth Amendment. It is my opinion, in cases such as this, where the evidence is not voluminous and where first-hand evidence is readily and conveniently available, that hearsay evidence cannot be the sole evidence presented to the grand jury. At the same time, however, I recognize that in certain kinds of cases, where voluminous evidence must be presented, as for example in *Costello*, hearsay must be used. Moreover, I recognize that in some circumstances it may be expeditious to couple hearsay evidence with available first-hand testimonial evidence. However, in those circumstances the grand jury should be informed specifically and directly that it is hearing hearsay evidence. United States v. Payton, 363 F.2d 996, 999–1000 (2nd Cir. 1966) (dissenting opinion, Friendly, J.). A mere general warning at the beginning of the grand jury will not suffice. In each instance the prosecutor must specifically call the attention of the grand jury to the nature of the evidence presented, that is, the grand jury must be told that the evidence is hearsay, that the point in dispute may be important enough to seek the first-hand source, and that the first-hand source can be provided for the jury's consideration.

For the reasons stated with respect to the prospectivity of the requirement of grand jury minutes, I likewise limit this holding to those indictments assigned to me handed down subsequent to the effective date of this decision. I note, however, that, unlike the case where minutes are involved, there is not, in every case where hearsay is used, prejudice to the defendant.

The defendants here, handicapped by the absence of grand jury minutes, have not been able to point to any specific harm caused by the use of hearsay. On information and belief, the defendants' attorney has stated that if Siegfried and Mary Ann Knekties had been put before the grand jury, no indictment *could have been obtained*. Defendants contend that, if the *whole* case had been developed before the grand jury by FBI Agent Gilles, moreover, likewise no indictment *could have been obtained*. I cannot accept so broad a statement as a compelling reason to conclude prejudice. Furthermore, the grand jury was informed that matters might be presented in hearsay fashion through government agents' testimony and if found unacceptable, they could request direct substantiation through direct testimony of the relevant witnesses.

As ruled in this decision, the preliminary statement given to the grand jury lacked the nicety of detail and specificity to be required in the future, but for the purposes of this case is certainly acceptable.

The motions to dismiss in this regard are denied.