In the Matter of the Miscellaneous Grand Jury Investigation of Robert TRUAX.

**Misc. Grand Jury No. 6260.**

United States District Court, C. D. California.

Oct. 26, 1977.

Dennis R. Bunker and Howard J. Parker, Antitrust Div., Dept. of Justice, Los Angeles, Cal., for plaintiff.

Stanley I. Greenberg, Kirschner & Greenberg, Los Angeles, Cal., for Robert Truax.

## OPINION

TAKASUGI, District Judge.

Robert Truax will be a target of a grand jury investigation which may lead to a return of an indictment against him. In reliance upon Rule 6(d), Federal Rules of Criminal Procedure,[1] he seeks a preindict-

---

1. Rule 6(d) reads:
   "*Who May be Present.* Attorneys for the government, the witness under examination, interpreters when needed and, for the pur-

pose of taking the evidence, a stenographer or operator of a recording device may be present while the grand jury is in session, but no person other than the jurors may be

ment order compelling the Department of Justice to provide for, at his expense, a court reporter to be present to record in its entirety any grand jury proceeding relating to him, including prosecutorial comments, advice and instructions.[2] The Government does not oppose the recordation of witness testimony but objects to the recordation of any colloquy between grand jurors and the prosecutor when no witness is before the grand jury.

Two Ninth Circuit decisions, *United States v. Thoresen,* 428 F.2d 654 (1970) and *United States v. Price,* 474 F.2d 1223 (1973) provide us with helpful guidelines on the issue of recording grand jury proceedings.

*Thoresen* stated:

"[T]he fact that a particular discovery procedure is 'permissive' rather than 'mandatory' does not mean that permission may be arbitrarily denied. Where a defendant (sic), anticipating future grand jury proceedings involving himself, gives notice in advance that he will seek a transcript of the proceedings if an indictment is returned and offers to pay the expense of having a reporter in attendance or shows inability to pay, a sound exercise of discretion would ordinarily call for the granting of a motion that a reporter be in attendance." 428 F.2d at 666.

In *Thoresen* the court refused to dismiss the grand jury indictment in spite of the fact that the grand jury proceedings were not recorded. Judge Ely, in a concurring opinion, while feeling bound to agree that a dismissal could not be granted because of the failure of petitioner to show a "particularized need" as enunciated in *Dennis v. United States,* 384 U.S. 855, 869 et seq., 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966),[3] expressed concern over the prosecution's failure to allow the recordation and the possible playing of a "cat and mouse game" with grave personal rights at stake. Judge Ely added the following observation:

"I have never been able to accept the proposition that while extensive discovery promotes the cause of justice in civil controversies, any right to discovery on the part of a defendant in a criminal case must be severely curtailed." 428 F.2d at 668.

In *Price* the Ninth Circuit reaffirmed *Thoresen* and stated:

"[T]he district court must exercise its discretion in passing upon a preindictment motion for recordation of grand jury proceedings and that a district court abuses its discretion in denying the motion of parties situated as were appellants, in the absence of a Government showing that it has a legitimate and compelling interest to be served by nonrecordation." 474 F.2d 1225.

The *Price* court vacated defendants' sentences and remanded the case to afford the defendants an opportunity to adequately demonstrate prejudice. Since recordation of grand jury proceedings had been rejected by the district court, if an adequate showing could be made on remand, the indictment would have to be dismissed. *Price* explained that "[t]he Government has known at least since *Thoresen* that a failure to record grand jury proceedings after notice that a defendant wants recordation could jeopardize a prosecution." at 1226.

After a careful review it appears that *Thoresen* and *Price* did not explicitly decide the issue of recording prosecutorial comments but merely made reference to the recording of grand jury *proceedings.* The Government here urges this court to restrict the interpretation of *proceedings* to witness testimony even though it concedes that the prosecutor plays a prominent and influential role before the grand jury.

The reasoning of *Thoresen* and *Price* appears to encourage the district court to

present while the grand jury is deliberating or voting."

**2.** Of course, Rule 6(d) specifically excludes a reporter "while the grand jury is deliberating or voting."

**3.** In *Dennis* the Supreme Court held as reversible error a denial of petitioners' motion for disclosure of portions of a grand jury transcript for which the petitioner had shown a "particularized need."

exercise its discretion in favor of granting recordation of all proceedings, including prosecutorial comments, absent a Government showing of a "legitimate and compelling interest to be served by nonrecordation."

A number of sources contend that the better view is to record all proceedings of the grand jury. In *United States v. Peden,* 472 F.2d 583, 584 (1973), the Second Circuit reasoned:

> "On appeal, Peden's principal argument is that the practice in the Southern District of not recording statements made by the Assistant United States Attorney to the grand jury when no witness is in the room unfairly deprives a defendant of the opportunity to learn of any improper remarks [footnote omitted]. . . . We have only recently reiterated that recordation of grand jury testimony of witnesses 'as a matter of course certainly is the better procedure,' [citations omitted], and we see no good reason why the same observation would not also apply to statements by the prosecutor."

The *Peden* court did not reverse the conviction and was unwilling to require recordation of the prosecutor's remarks even though it contended that such would be the better practice.[4] In *Peden* nonrecordation was raised *after* the grand jury had indicted the defendant. Traux is, in the case at bar, pursuing an order for recordation from this court *prior* to the grand jury proceedings when a less drastic ruling than a dismissal of the indictment may be made.

The Special Committee on Standards for the Administration of Criminal Justice of the American Bar Association has concluded that, "[t]he prosecutor's communications and presentations to the grand jury should be on record." *A.B.A. Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function,* § 3.5(c) [approved draft].

The Government's opposition to the recordation of the entire proceedings appears to be conceptual rather than particularized to this specific case involving this specific movant. The Government's attempted showing of a "legitimate and compelling interest" warrants review and analysis.

■ 1. The Government argues that since the real objective of recordation is for impeachment purposes, only witness testimony is relevant. This argument appears too limited. A defendant may find a prosecutor's comments to the grand jury, whether or not in response to an inquiry by a grand juror, to be of substantial relevance in challenging the indictment.[5]

■ Additionally, there is a need to exercise some control over a prosecutor's conduct. In this light, Judge Pettine in *United States v. Gramolini,* 301 F.Supp. 39, 41–42 (D.R.I.1969) declared that in his eighteen years as a prosecutor, appearing before hundreds of grand juries, he found "there develops between a grand jury and the prosecutor with whom the jury is closeted, a rapport—a dependency relationship—which can easily be turned into an instrument of influence on grand jury deliberations. *Recordation is the most effective restraint upon such potential abuses.*" (emphasis added)

2. The Government then urges that the cost of recording will have to be borne by the Government if the individuals could not, in indigent situations, afford to pay for it

---

4. Judge Oakes in his dissenting opinion in *United States v. Cramer,* 447 F.2d 210, 221 n. 1 (2nd Cir. 1971), choosing words laden with irony, criticized the Second Circuit's continued admonition that recordation of witness testimony is the better practice, without requiring that the better practice be followed, as casting the court in the " 'undesirable' posture of 'helpless piety.' " A similar observation may be made for nonrecordation of prosecutorial comments.

5. The Government also contends that the phrase "for the purpose of taking the evidence" in Rule 6(d) restricts the presence of a stenographer or operator of a recording device to only those periods when witness testimony is being taken. This is too narrow a reading of "evidence." Evidence here may also mean evidence necessary to challenge an indictment and this includes colloquy between grand jurors and the prosecutor. Rule 6(d) expressly excludes non-grand jurors only while the grand jury is deliberating or voting.

themselves. The problem of cost, at least in the instant case, is not an issue since Truax has agreed to pay for the recordation sought. However, even in the case of indigency and despite a concern for provident cost management of the judicial system, the issue of economics should never be permitted to defeat our efforts to seek justice. *Gramolini,* in specifically rejecting the cost argument, declared that "the cost is clearly justified by the improved administration of criminal justice." 301 F.Supp. at 42.

■ 3. The Government further contends that recordation of questions by grand jurors to their "legal counsel" (the prosecutor) can have a "chilling effect" on the freedom of the grand jurors, "inhibit the investigation" and challenge grand jury secrecy.[6]

The Ninth Circuit in *Price* met a similar argument:

"The Government cannot meet its burden by resort to the secrecy rubric. Secrecy of grand jury proceedings is not jeopardized by recordation. *The making of a record cannot be equated with disclosure of its contents,* and disclosure is controlled by other means." (emphasis added) 474 F.2d at 1225.

Disclosure would only come after a showing of "particularized need" under *Dennis, supra.* This provides ample protection for the grand jury. Under these circumstances it is hard to conceive of recordation having a "chilling effect" upon any proper conduct of grand jurors or prosecutors. In fact, they should welcome recordation as a protection against criticisms of their proceedings. The defendant could no longer claim that even if he or she could make a "particularized need" showing it would be to no avail as no record exists to test the challenge.

4. The Government declares that the mere existence of such transcripts would act as a catalyst for the filing of motions in virtually every case, burdening district court judges and limiting the historic independence of the grand jury.

With respect to the burden on the judiciary, I am certain that judges are conscientious in meeting their obligations under the law to provide the service necessary to insure the integrity of the courts and to protect the rights of all parties to fair play. It is not in keeping with our system of justice to relieve crowded court dockets at the expense of criminal defendants who face potential prison terms.

Nonrecordation could work greater burden and delay on the judicial system. If a "particularized need" showing is made and no transcript is available, the indictment might have to be dismissed and new grand jury proceedings initiated.

The Government offers no evidence to support their contention that recordation of grand jurors' questions and prosecutorial comments would lead to district court infringement upon proper grand jury activities. A more accurate assessment was made in *Gramolini*:

"In no way does recordation inhibit the grand jury's investigation. True, recordation restrains certain prosecutorial practices which might, in its absence be used, but that is no reason not to record." 301 F.Supp. at 41.

■ 5. Lastly, the Government argues that its work product might be unfairly and unnecessarily revealed while still in the formulative stages. If a "particularized need"

**6.** In *In re Russo,* 53 F.R.D. 564 (C.D.Cal.1971), the Government contended that providing a witness with a transcript of his own grand jury testimony would invade the secrecy of grand jury proceedings and diminish the effectiveness of the grand jury as an institution. In rejecting this argument, Judge Ferguson wrote a scholarly examination of the history of the grand jury and its tradition of secrecy. See pp. 568–570. Of particular note are Judge Ferguson's observations that: ". . . [T]he common law concept of grand jury secrecy developed from a

need to protect the jurors and the accused from the tyranny of the Crown. Secrecy insulated the jurors from the pressures of the Crown and permitted the grand jury to guard the people against the oppressive power of autocratic government." at 568–9; and "Over the years, as fear of the oppressive power of the government has subsided, the government prosecutor has regained substantial influence over the grand jury and, consequently, that institution has lost much of its former independence." at 569.

is shown the judge can, upon his *in camera* review of the record, grant a protective order consistent with the rights of both parties.

This review of the Government's arguments leads to the necessary conclusion that no "legitimate or compelling interest" has been shown that will be served by nonrecordation.

 Petitioner's motion for an order compelling recordation of grand jury proceedings in their entirety, including colloquy between grand jurors and the prosecutor, is granted under Rule 6(d) and 57(b) of the Federal Rules of Criminal Procedure.[7] It is surely a sensible and fair request. It will only serve to protect defendants' rights and strengthen the integrity of the court, the prosecutor, and the grand jury and thus strengthen our entire system of justice.