**In re The Grand Jury Subpoena EAST NATIONAL BANK OF DENVER, Southeast State Bank.**

**Civ. A. No. 81-W-667.**

United States District Court, D. Colorado.

June 24, 1981.

Joseph F. Dolan, U. S. Atty., Susan R. Roberts, First Asst. U. S. Atty., John M. Barksdale, Asst. U. S. Atty., Denver, Colo., for the Government.

Rothgerber, Appel & Powers by James M. Lyons and Lynne Eisaguirre, Denver, Colo., for the Banks.

Holland & Hart by Richard M. Koon, Denver, Colo., for Colorado Bankers Association.

## MEMORANDUM OPINION

WINNER, Chief Judge.

Grand Jury subpoenas were served on Southeast State Bank and East National Bank of Denver. Those subpoenas commanded the production of customers' records, and the banks and their lawyers found themselves on the horns of a dilemma. Their quandary stemmed from diametric conclusions of the United States Supreme Court and the Supreme Court of Colorado in the interpretation of the same provisions of the United States Constitution and the Colorado Constitution.

In *United States v. Miller* (1976) 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71, a divided court held that a bank depositor has no Fourth Amendment expectation of privacy of records of his bank account, while in *Charnes v. DiGiacomo* (1980) 612 P.2d 1117, a unanimous Colorado Supreme Court adopted the position of the Supreme Court of California and that of the dissent in *Miller.* The Colorado Court held that there is a state created expectation of privacy of a Colorado depositor's bank records under Article II, Section 7, of the Constitution of Colorado. *Charnes v. DiGiacomo* discussed, disagreed with and rejected the majority view in *Miller,* and the Colorado Supreme Court decision winds up saying:

"An individual has an expectation of privacy in records of his financial transactions held by a bank in Colorado."

The banks' attorneys, expressing a concern shared by counsel for the Colorado Bankers Association, told their clients that if without notice to the depositor, the banks disclosed customer records in violation of an expectation of privacy protected by the Colorado Constitution, there was grave risk of liability should a state court damage action be filed by the bank's customer. This advice rested in part on the reasoning of the Colorado Supreme Court that under the Colorado Constitution, the depositor could intervene as a matter of right under the provisions of C.R.C.P. 24(a) which is word for word with the same federal rule.

Faced with this dilemma, and with inadequate time available to litigate the dichotomy of state and federal law through ordinary procedures, bank counsel could think of no way to present the question to any court other than by motion to quash the grand jury subpoenas. Believing, as I did, that difficult legal questions were presented, I asked for full briefs from bank counsel and from the United States Attorneys office, and I invited an amicus brief from the Colorado Bankers Association. Bank counsel and Association counsel filed exceptionally fine briefs. The United States Attorneys office filed a one and one-half page simplistic brief which almost sneered at the problems raised by the banks' motions and at my request for full briefing and discussion. The government was content to say that the Supremacy Clause controlled and that if the banks were held liable in a state court damage action, that was a problem for the banks to worry about, and that neither the United States Attorneys office nor the court should concern themselves over the impossible situation faced by all Colorado banks.

I was bewildered by government's casual approach to this important matter, and I wrote the United States Attorney:

"The two referenced cases have been consolidated. In each, the movant bank seeks to quash a grand jury subpoena, and, when the motions first came up, I said on the record that I perceived very

difficult constitutional questions plus other legal problems for all Colorado banks. These result from the diametric views of the United States Supreme Court and the Colorado Supreme Court. I then emphasized that I wanted very full briefs, and I said that I suspected that the entire Colorado banking industry was deeply worried. I invited the Colorado Bankers Association to appear as amicus, and, seemingly my belief as to the concerns of Colorado bankers was well taken, because an amicus brief was filed.

"Although I asked for briefing in depth, your office filed a simplistic brief of less than two pages. This brief treats the many problems with a cavalier approach that there is no problem because of the supremacy clause. The moving banks do not agree and the Colorado Bankers Association does not agree. Bank counsel and association counsel filed outstanding briefs of somewhat more than two pages, and these briefs argue things not mentioned in the government's short brief. The original order directed that the government file a reply brief, but none was filed, and the matter came on for hearing last Friday with no written response on the part of your office. I told all counsel that because this case has the potential of going all the way to the United States Supreme Court, I do not want to rule on it without adequate briefing by the government, and I attempted to fix times for the filing of more briefs. "However, at that point, a statement was made by bank counsel which troubled me. He said that one of your assistants stated to a group of bankers attending a meeting or seminar that if any bank or banker opposed a grand jury subpoena or disclosed to a customer that the customer's records had been subpoenaed, that bank or banker would be prosecuted for obstruction of justice. I mentioned that Rule 6, Federal Rules of Criminal Procedure says that no obligation of secrecy can be imposed on a grand jury witness and that to attempt to do so is contempt of court. The assistant handling the court hearing voiced no concern as to the

threatening statement supposedly made by another one of your assistants. That being so, I set the matter for hearing to find out if any such statement was made, and, if so, by whom. To help in this inquiry the banks are to file affidavits identifying the assistant who supposedly made the threat.

"Upon reflection, it may be that the scheduled evidentiary hearing is not necessary. If it is the policy of your office that a bank receiving a subpoena duces tecum to appear before a grand jury faces possible prosecution for obstruction of justice if the subpoena is resisted or if a bank customer is notified, we can move at once to the legal questions without necessity for any evidentiary hearing. Therefore, I ask that you let me know the policies of your office as to what may happen to a banker who moves to suppress a grand jury subpoena or who advises a customer that his records are being supplied to a grand jury."

Having thus expressed concern as to the difficult position of the banks as those difficulties were enhanced by the alleged implied threats of an assistant United States Attorney, and having asked for a statement of policy concerning possible criminal prosecution of Colorado banks or bankers, I received the following enigmatic reply from the United States Attorney:

"I write to respond to your May 4 letter in which you ask me to let you know the policies of our office as to what may happen to a banker who moves to suppress a grand jury subpoena or who advises a customer that his records are being supplied to a grand jury.

"Whether or not the bank is required to produce the records is a matter for the courts to decide, and it is not our policy to take into consideration for any purpose the assertion by a person of their legal rights."

It was against this backdrop that a hearing was held to inquire into the true facts, and these facts were established:—

A seminar was held for bankers, and an assistant United States Attorney was invited to speak. At that seminar and in private discussions which followed later, she told bankers that they had to respond to a grand jury subpoena [something all of them already knew] and she added that if they notified their customers [something expressly authorized by the Colorado Supreme Court] they were looking at dire consequences. There was an express or implied threat of criminal prosecution for obstruction of justice if the bankers told their customers that the customer's records had been subpoenaed. She also demeaned the legal advice given by the banks' attorneys, Rothgerber, Appel and Powers, who had told their clients that they were caught between threat of a criminal prosecution and threat of a state court civil action, and, once more, there was express or implied threat by the assistant United States Attorney of prosecution if counsel's advice be followed. This criticism was expressed publicly, and it was repeated in later conversations with the firm's clients. These conversations took place with knowledge that the banks had private counsel and they took place outside the presence of and without the consent of counsel employed by the banks. This testimony accusing improper conduct by an assistant United States Attorney was presented with the assistant said to have made the statements and to have engaged in the conversations present in court and with the First Assistant United States Attorney also present. There was no contradiction of the testimony, although I said on the record that I would apply the rule of *Mammoth Oil Co. v. United States* (1927) 275 U.S. 13, 48 S.Ct. 1, 17 L.Ed. 137, and *United States v. Feeney* (1980) 501 F.Supp. 1324, and *United States v. Feeney* (1980) 501 F.Supp. 1337. Accordingly, I deem the accusations admitted.

The local rules of this court [with a few enumerated exceptions] adopt the Code of Professional Responsibility adopted by the Colorado Supreme Court, and DR 7–104 says:

"(A) During the course of his representation of a client a lawyer shall not:

"(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so. "(2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client."

I think that Rothgerber, Appel and Powers has been around long enough and that the firm has a reputation for competence which is so widespread that it is unlikely that the firm will lose many clients or many fees as a result of the calumny. However, because of the concerns expressed by the banks and by the Bankers Association over the threatened retribution if service of a grand jury subpoena be disclosed to a bank customer, I think that the propriety of any such threat should be explored.

To suggest that bankers must risk a civil suit in a state court because of some secrecy obligation imposed by federal law flies in the teeth of recent Congressional policy; and it is thought by some that *United States v. Miller* (1976) 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71, and *California Bankers Association v. Shultz* (1973) 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812, are the proximate cause of recent actions of Congress. For countless years, the IRS examined everyone's bank records unhampered by any restraints. Responding to widespread complaints, Congress passed the "Third Party Record Keepers" statute, 26 U.S.C. § 7609, which requires that bank customers be notified when the IRS wants to look at their bank records and which gives the customer a right to direct the bank to refuse the inspection without court order. Upon the issuance of such instruction, the IRS has to come to court, and the taxpayer can intervene as a matter of right. In Colorado we have the procedure pretty well streamlined as is explained in *United States v. Bank of Monte Vista*, 451 F.Supp. 945. Although,

undeniably, once they have intervened, taxpayers face an almost insurmountable hurdle erected by *United States v. LaSalle National Bank* (1977) 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221. Whether the hurdle is or is not surmountable by a taxpayer, it cannot be gainsaid that the taxpayer has to be notified that the IRS is prowling about among the taxpayer's bank records. Thus, under the Third Party Record Keepers statute, where just a few years ago the IRS could investigate under cover, today IRS investigations of bank records can't be conducted in secret.

Then, in 1978, Congress passed the Financial Privacy Act, 12 U.S.C. § 3401, *et seq.* which applies to agencies other than the IRS. Except in extraordinary circumstances, all agencies except the IRS have to give notice to customers before looking at bank records, [just as is required of the IRS under Title 26] and even under the extraordinary circumstances which must be approved by a court [See, 12 U.S.C. § 3409] notice has to be given the bank customer after 90 days. The requirement for notice applies to subpoenas, including judicial subpoenas [See, 12 U.S.C. § 3407] which says that unless the extraordinary conditions listed in § 3409 are met, a copy of the subpoena and a notice telling why the records are being subpoenaed must be served on the depositor. A grand jury subpoena is exempted under § 3413(i) but § 3415 and § 3420 are applicable to grand jury subpoenas, and nowhere can authority for the directive issued by the Colorado assistant United States Attorney be found. 12 U.S.C. § 3407 says in its entirety:

"A Government authority may obtain financial records under section 3402(4) of this title pursuant to judicial subpena only if—

"(1) such subpena is authorized by law and there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry;

"(2) a copy of the subpena has been served upon the customer or mailed to his last known address on or before the date on which the subpena was served on the financial institution together with the following notice which shall state with reasonable specificity the nature of the law enforcement inquiry:

'Records or information concerning your transactions which are held by the financial institution named in the attached subpena are being sought by this (agency or department or authority) in accordance with the Right to Financial Privacy Act of 1978 for the following purpose: If you desire that such records or information not be made available, you must:

'1. Fill out the accompanying motion paper and sworn statement or write one of your own, stating that you are the customer whose records are being requested by the Government and either giving the reasons you believe that the records are not relevant to the legitimate law enforcement inquiry stated in this notice or any other legal basis for objecting to the release of the records.

'2. File the motion and statement by mailing or delivering them to the clerk of the Court.

'3. Serve the Government authority requesting the records by mailing or delivering a copy of your motion and statement to

'4. Be prepared to come to court and present your position in further detail.

'5. You do not need to have a lawyer, although you may wish to employ one to present you and protect your rights.

'If you do not follow the above procedures, upon the expiration of ten days after the date of service or fourteen days from the date of mailing of this notice, the records or information requested therein will be made available. These records may be transferred to other government authorities for legitimate law enforcement inquiries, in which event you will be notified after the transfer;' and

"(3) ten days have expired from the date of service or fourteen days from the date of mailing of the notice to the customer

and within such time period the customer has not filed a sworn statement and motion to quash in an appropriate court, or the customer challenge provisions of section 3410 of this title have been complied with."

With this limitation Congress put on investigative prying into bank records by government agencies, the public and private threat of prosecution of a bank officer for obstructing justice were he or she to tell a customer the customer's records have been subpoenaed becomes even more difficult to understand, [but, see, *In re Vescovo Special Grand Jury* (1979) 473 F.Supp. 1335, where a similar approach was taken]. The attack on bank counsel's competence in worrying about the banks' dilemma is beyond my comprehension.

Finally, there is still another reason a banker can't be muzzled as to any grand jury subpoena served on the bank. The banker is a witness, and it is contempt of court to impose a secrecy obligation on a grand jury witness. For countless years, witnesses before grand juries were routinely sworn to secrecy as to what they produced for or told to the grand jury. That has been changed in the federal court, and, although grand jurors, government lawyers and government personnel can't tell what goes on before a grand jury, Rule 6(e) says, "No obligation of secrecy may be imposed on any person except in accordance with this rule," and Rule 6 limits the secrecy obligation to persons other than witnesses.

Although there is some authority for the proposition that a *court* can impose a secrecy obligation on witnesses under very limited circumstances, *In re Swearingen Aviation Corp.* (1979) D.C.Md., 486 F.Supp. 9, I am unaware of any case of recent vintage letting a United States Attorney instruct witnesses that they can't disclose to anyone what they told to or what they produced for a grand jury. However, I am aware of many cases holding that no secrecy obligation can be imposed by a prosecutor. *In re Investigation* (1976) D.C.Cir., 531 F.2d 600; *In re Russo* (1971) 53 F.R.D. 564; *Petition for Disclosure of Evidence* (1960) 184

F.Supp. 38; *In re Grand Jury* (1970) 321 F.Supp. 238; *In re Minkoff* (1972) 349 F.Supp. 154; *In re Alvarez* (1972) 351 F.Supp. 1089; *In re Grand Jury Witness* (1974) 370 F.Supp. 1282; *In re Langswager* (1975) 392 F.Supp. 783; *In re Vescovo* (1979) 473 F.Supp. 1335.

My astonishment at the threats made to all Colorado bankers and at the criticisms level at leading Colorado law firms by a tyro assistant United States Attorney is not lessened by the case last cited because it is on all fours with our facts, [except for the public criticism of bank counsel] and Judge Byrne was as baffled as am I at the attempted imposition of an obligation of secrecy directed at a bank. There, the government served a grand jury subpoena on the Crocker National Bank, and along with it was a letter from a Special Attorney with the Department of Justice telling the bank not to disclose to its customer the fact of the service of the subpoena. The Special Attorney for the Department of Justice tried to innovate a novel adaptation of 12 U.S.C. § 3409, and he took over the court's function under that statute. Presumably he wasn't familiar with § 3413(i) when he tried to give to the Department of Justice the power to order Crocker Bank to keep quiet for 90 days. In any event, Crocker Bank counsel told the government that they thought that under state law they had to disclose the fact of service of the subpoena which is precisely what the California Supreme Court held in *Valley Bank of Nevada v. Superior Court*, 15 Cal.3d 652, 125 Cal. Rptr. 553, 542 P.2d 977. It is important to note that *Valley Bank*, which implies that there is a *duty* under California law to notify the customer of the grand jury subpoena, was grounded on *Burrows v. Superior Court*, 13 Cal.3d 238, 118 Cal.Rptr. 166, 529 P.2d 590, and *Burrows* was the case followed in *Charnes v. DiGiacomo* (1980) Colo., 612 P.2d 1117, where, speaking for a unanimous court, Justice Dubofsky said:

"An individual has an expectation of privacy in records of his financial transactions held by a bank in Colorado. This expectation of privacy will prevent un-

reasonable governmental access to the records, ..."

Thus, the Supreme Court of California has exhibited the same degree of alleged incompetence as the assistant United States Attorney attributed to Rothgerber, Appel and Powers, and, inferentially, to Holland and Hart since that firm represents the Bankers Association and it, as amicus, has expressed the same concern as that voiced by bank counsel. Judge Byrne held in *In re Vescovo Special Grand Jury, supra* :

> "The court concludes that there is no distinction for purposes of Rule 6(e) between a witness's freedom to disclose his oral testimony before a grand jury and his freedom to disclose what documentary evidence the witness has been compelled to provide to the grand jury. *The government therefore cannot legally impose an obligation of secrecy upon Crocker with respect to this subpoena duces tecum* ... [emphasis supplied.]

> "The government's letter requesting that the subpoena not be disclosed to the depositor may, however, be interpreted as an informal request that the bank exercise any discretion it may have not to disclose the subpoena. As such, the letter does not require the bank to do or not to do anything. It merely informs the bank that the government believes its investigation would be hindered by the disclosure of the subpoena.

> "Accordingly,

> "IT IS ORDERED, that the motion to quash the subpoena duces tecum is denied."

That is precisely what I ordered at the time of oral argument on this case, and I at that time said that this written opinion would follow in due course. Thus, I join Morrison & Forester (who represented Crocker Bank), Rothgerber, Appel and Powers (who represent the banks here), Holland and Hart (who represent the Colorado Bankers Association) and Judge Byrne (who wrote *In re Vescovo Special Grand Jury*), and I dissent from the "supremacy clause" brush-off given the banks' serious problems by the United States Attorney. Contrary to those views, I hold that the banks can, or they cannot, as they choose, notify a customer that the customer's bank records have been subpoenaed. If a bank notifies a customer, no sustainable prosecution for obstructing justice can follow. If a bank does not notify the customer, it risks the chance of a lawsuit in state court for omitting the notice. It's the bank's money from which any damage award would have to be paid, and it is for the bank's officers and directors to decide what business risks the bank wants to assume. All I say is that the government doesn't have to notify the customer of service of a grand jury subpoena, and the bank has the choice of giving or not giving notice without risk of successful prosecution for obstruction of justice if notice be given. The banks must decide on an ad hoc basis what they wish to do. Reliance should be placed on advice of each bank's lawyer, and not on the unsolicited curious advice of an assistant United States Attorney talking to another lawyer's clients outside the presence of and without the consent of the other lawyer.