**In re GRAND JURY SUBPOENA.**

No. A98–0031 MI (JKS).

United States District Court,
D. Alaska.

March 15, 1999.

## ORDER RE: MOTION TO QUASH GRAND JURY SUBPOENA

SINGLETON, Chief Judge.

National Bank of Alaska ("NBA"), recipient of a federal grand jury subpoena duces tecum requiring it to produce certain depositor records, filed a motion to quash the subpoena pursuant to Federal Rule of Criminal Procedure 17(c). *See* Docket Nos. 1 (Motion), 7 (Reply). NBA argues that it is prohibited by Alaska statutory law (AS 06.05.175) from complying with the grand jury subpoena until such time as a court order directs compliance. NBA further argues that the grand jury subpoena is unreasonable and oppressive because it requires the bank to violate state law, thus subjecting NBA to suit by a customer.

In opposing NBA's motion to quash, the United States argues that the motion should be denied under the Supremacy Clause of the United States Constitution, asserting that the constitutional rights and powers of federal grand juries and the federal Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. §§ 3401–3422, preempt state law on the issue of production of financial records to federal grand juries. *See* Docket No. 5 (Opposition). The United States further argues that because state law on that issue is preempted, NBA is not subject to potential liability from its customers.

On December 9, 1998, this Court issued an order discussing the nature of the dispute between the parties, directing NBA to comply with the subpoena and thereby immunizing it from liability under AS 06.05.175, and indicating that a more thorough written decision would issue in the future. *See* Docket No. 10 (Order). The Court thereafter issued a tentative order setting forth its preliminary views regarding the dispute and requesting that the parties file responses as they deem appropriate. *See* Docket No. 11 (Tentative Order). Both parties filed timely responses and this action is now ready for final decision. *See* Docket Nos. 12 (United States' Response), 13 (NBA's Response).

## DISCUSSION

**1. *This Action Is Not Mooted By NBA's Having Complied With The Federal Grand Jury Subpoena At Issue.***

NBA and other financial institutions in Alaska have historically been served with federal grand jury subpoenas similar to the one contested in this action. The data maintained by financial institutions is helpful in the investigation and prosecution of numerous criminal actions (e.g., drug trafficking, money laundering and bank fraud). In its initial order, this Court denied NBA's motion to quash and directed compliance with the grand jury subpoena. The Court noted at that time that directing compliance might arguably moot this entire action.

A claim is moot if it has lost its character as a present, live controversy. *See United States v. Geophysical Corp. of Alaska,* 732 F.2d 693, 698 (9th Cir.1984). However, it is well established that a live case or controversy remains even after the challenged activity ceases if the government's actions are capable of repetition, yet evading review. *See Southern Pac Terminal Co. v. Interstate Commerce Comm'n,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911); *Alaska Fish & Wildlife Fed'n v. Dunkle,* 829 F.2d 933, 939 (9th Cir.1987), *cert. denied,* 485 U.S. 988, 108 S.Ct. 1290, 99 L.Ed.2d 501 (1988). The capable-of-repetition doctrine is limited to extraordinary cases where: (1) the duration of the challenged action is too short to be fully litigated before it ceases; and (2) there is a reasonable expectation that the plaintiffs will be subjected to the same action again. *See Dunkle,* 829 F.2d at 939 (citations omitted). The Court is of the view that this action falls precisely within the parameters of this test. *See Matter of Special April 1977 Grand Jury,* 581 F.2d 589, 591 (7th Cir.), *cert. denied,* 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 705 (1978) (prior compliance with grand jury subpoena does not render objections to subpoena moot where there is a reasonable expectation that complaining party would be subjected to the same action again and the issues could not be fully litigated prior to compliance). *But see United States v. Arthur Andersen & Co.,* 623 F.2d 720, 725 (1st Cir.) (requiring party objecting to subpoena to incur contempt sanction in order to obtain review), *cert. denied,* 449 U.S. 1021, 101 S.Ct. 588, 66 L.Ed.2d 483 (1980).[1]

First, there is an obvious and important need for prompt response to federal grand jury subpoenas. In this action, the grand jury's consideration of two criminal cases was delayed by thirty days to the prejudice of its investigation because of NBA's objection to the subpoena. *See* Docket No. 5, Aff. of Robert C. Bundy. The Ninth Circuit has specifically stated that where it would be difficult to fully contest the validity of each subpoena in subsequent actions because of the need for prompt response to the subpoenas, the case is capable of repetition, yet evading review. *See United States Envtl. Protection Agency v. Alyeska Pipeline Serv. Co.,* 836 F.2d 443, 445 (9th Cir.1988).

To satisfy the second requirement, NBA must make a reasonable showing that it will again be subject to the service of federal grand jury subpoenas. *See Dunkle,* 829 F.2d at 939. On this issue, there is no dispute between the parties. Indeed, the United States Attorney has stated that "[b]ecause of the important evidentiary volume of financial institution records in investigations of numerous federal drug and white collar crimes, a significant number of grand jury subpoenas are issued to financial institutions in Alaska." *See* Docket No. 5, Aff. of Robert C. Bundy ¶ 12. This trend will undoubtedly continue into the future with the prevalence of federal drug and white collar crime prosecutions. Furthermore, the general public has a strong interest in seeing these actions vigorously and expediently prosecuted, and the existence of a "public interest in having the legality of the practices settled ... militates against a mootness conclusion." *See United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

The Court concludes that this action falls squarely within the capable-of-repetition doctrine and is therefore not moot.

**2. *Alaska Law And Federal Law Do Not Conflict On The Issue Of Complying With Federal Grand Jury Subpoenas.***

Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land;

---

1. It appears that NBA and other similarly situated banks are "disinterested" third parties as the Ninth Circuit understands that term. *See United States v. Kersting,* 891 F.2d 1407, 1410–11 (9th Cir.1989), *cert. denied,* 498 U.S. 812, 111 S.Ct. 49, 112 L.Ed.2d 25 (1990).

... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. As a result, it has long been recognized that a state law conflicting with federal law is preempted and is without effect. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516–17, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

Three different sources of authority are relevant to the preemption inquiry currently before the Court. The first authority, and the one which apparently prompted this litigation, is AS 06.05.175. The Alaska statute is aimed at protecting the confidentiality of bank records pertaining to depositors and customers in Alaska, and relatively recent amendments to the statute were adopted for the specific purpose of limiting the ability of banks to comply with grand jury subpoenas issued to them for customer records. The second relevant authority is Rule 17 of the Federal Rules of Criminal Procedure, pursuant to which men and women having knowledge of facts relevant to a proceeding before a federal grand jury are generally obligated to appear and give testimony or turn over records or documents in their possession when properly summoned. The third and final relevant authority is the RFPA. Similar to AS 06.05.175, the RFPA was enacted to protect customers of financial institutions from unwarranted government intrusion into their financial records. The RFPA parts company with AS 06.05.175, however, in that it explicitly exempts federal grand jury subpoenas from its customer notice and civil liability provisions.

Alaska Statute 06.05.175, Rule 17 and the RFPA therefore must be closely examined to decipher whether financial institutions in Alaska can comply with all relevant authorities governing the grand jury subpoena process. This Court must determine whether anything in the state statute stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the federal authorities. *See Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995). The United States argues that AS

06.05.175 conflicts with the federal authorities and that the Alaska statute is therefore preempted. NBA, on the other hand, maintains that AS 06.05.175 and the federal authorities do not conflict, and that it must therefore comply with Alaska law, which it interprets to require that financial institutions only honor federal grand jury subpoenas when the subpoenas are accompanied by a court order. The Court believes that there are deficiencies in each party's argument. At the outset, however, the relevant authorities need to be separately examined.

### A. *Alaska Statute 06.05.175*

In pertinent part, AS 06.05.175 provides as follows:

(a) The bank records pertaining to depositors and customers are confidential and may not be made public except when

(1) the bank, customer, or depositor is compelled to disclose the contents of the records by a court order; [or]

(2) their disclosure is required by federal or state law or regulation;

. . . . .

(b) When disclosure of bank records is required or allowed under (a)(1) or (2) of this section, the bank shall notify the depositor or customer of the disclosure. If notification before disclosure is not possible, the bank shall immediately notify the customer or depositor of the disclosure or inquiry. However, notification may not be made if disclosure is made under a search warrant or under a court order issued at the behest of a grand jury.

Relying upon AS 06.05.175(a)(1), NBA argues that financial institutions in Alaska are prohibited from honoring federal grand jury subpoenas seeking the disclosure of depositor records until such time as a federal court has ordered compliance.

NBA points out that prior to 1994, AS 06.05.175(a)(1) provided that depositor records were confidential and could not be

made public except when "the bank, customer or depositor is compelled to disclose the contents of the records by a court." *See* § 20, Ch. 26, SLA 1993. The 1993 amendments to this statute changed the wording of AS 06.05.175(a)(1) to provide that depositor records are confidential and may not be made public except when "the bank, customer or depositor is compelled to disclose the contents of the records by a court *order*." *See id.* (emphasis added). NBA also points out that prior to 1994, the final sentence of AS 06.05.175(b) provided that a customer could not be notified of a compelled or required disclosure under sections (a)(1) or (a)(2) if the disclosure was made "under a subpoena issued by or at the behest of a grand jury." *See* § 21, Ch. 26, SLA 1993. The 1993 amendments changed the wording of AS 06.05.175(b) to provide that a customer may not be notified of a compelled or required disclosure under sections (a)(1) or (a)(2) if the disclosure is made "under a *court order* issued at the behest of a grand jury." *See id.* (emphasis added).

■ The 1993 amendments to AS 06.05.175 clearly were adopted for the specific purpose of limiting the ability of banks to comply with grand jury subpoenas issued to them for customer records. The legislative history demonstrates this purpose:

> *Sections 20 & 21.*
>
> [W]e have changed this statute to clarify that bank records need not be released pursuant to subpoena. Given that subpoenas can be obtained routinely from the court clerk without judicial review, to permit the release of info in response to a subpoena would amount to an elimination of any customer confidentiality, and has resulted in a huge burden on the banks.

*See* Drafter's Sectional Analysis of S.B.149, Senate Judiciary Committee 1993. However, it appears to this Court that the 1993 amendments were not crafted with enough care to achieve their intended purpose. Significantly, AS 06.05.175(a)(2) was not affected by the 1993 amendments, and it

allows for disclosure of customer records where disclosure is required by "federal or state law or regulation."

As will be discussed more thoroughly after examining the relevant federal authorities, the Alaska legislature seems to have either overlooked the significance of AS 06.05.175(a)(2), or perhaps somehow misunderstood the interplay between subsections (a)(1) and (a)(2). Incorporating section (a)(2) into the equation, there is a very reasonable argument that financial institutions such as NBA fully comply with Alaska's financial records disclosure law when they honor grand jury subpoenas (whether issued by a state or a federal grand jury) even if there is no court order accompanying the subpoena. A more complicated question is whether financial institutions in Alaska should notify customers (pursuant to AS 06.05.175(b)) of financial records disclosures when presented with a grand jury subpoena without a court order directing delayed-notification. This latter question is beyond the scope of the issue presented to the Court in this action, but the Court will nevertheless briefly comment toward the end of this decision.

B. *Federal Rule of Criminal Procedure 17*

■ The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. CONST. amend. V. A federal grand jury possesses broad investigatory powers with which to inquire into violations of federal law. *See United States v. R. Enters., Inc.,* 498 U.S. 292, 297–99, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991); *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Branzburg v. Hayes,* 408 U.S. 665, 687–91, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Kastigar v. United States,* 406 U.S. 441, 443–44, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *Blair v. United States,* 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919). The power of government to compel per-

sons to testify in court or before grand juries is firmly established in Anglo–American jurisprudence. *See Kastigar*, 406 U.S. at 443 & n. 2, 92 S.Ct. 1653 (citing 8 J. WIGMORE, EVIDENCE § 2190 (J. McNaughton rev.1961)). "The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials." *Calandra*, 414 U.S. at 343, 94 S.Ct. 613.

 Federal Rule of Criminal Procedure 17 governs the issuance of subpoenas in criminal cases.[2] For the United States, Rule 17 implements the public duty to respond to a grand jury subpoena duces tecum. *See* 2 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 271 (2d ed.1982). *See also* 28 U.S.C. § 1826 (governing treatment of recalcitrant witnesses). The Supreme Court has repeatedly made clear that a grand jury subpoena is much different from a subpoena issued in the context of a prospective criminal trial. *See R. Enters.*, 498 U.S. at 297, 111 S.Ct. 722; *Blair*, 250 U.S. at 282, 39 S.Ct. 468. A recipient of a federal grand jury subpoena duces tecum may only challenge the subpoena by filing a motion to quash pursuant to Rule 17(c), as was done by NBA in this action.

2. In pertinent part, Rule 17 provides:
(a) **For Attendance of Witnesses; Form; Issuance.** A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein.

. . . . .

(c) **For Production of Documentary Evidence and of Objects.** A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers,

### C. *The Right to Financial Privacy Act*

 The RFPA was enacted in 1978 to provide bank customers with a measure of privacy for their financial records in the hands of banks and related institutions. *See generally Young v. United States Dep't of Justice*, 882 F.2d 633, 636–37 (2nd Cir.1989), *cert. denied*, 493 U.S. 1072, 110 S.Ct. 1116, 107 L.Ed.2d 1023 (1990). The statute generally prohibits any federal entity from obtaining access to copies or information contained in financial records unless the customer consents or the government complies with the customer notice provisions required by law.[3] A balance was struck in the statute between customers' rights to privacy and law enforcement's need to obtain financial records pursuant to legitimate investigations in a variety of ways. *See generally* Richard Cordero, Annotation, *Construction and application of Right to Financial Privacy Act of 1978*, 112 A.L.R.FED. 295, 314–15 (1993). Relevant to this action, a particular balance was struck relating to federal grand jury subpoenas.

On the one hand, federal grand jury subpoenas were specifically exempted from the provisions of the RFPA requiring notice to customers and an opportunity for them to challenge a request for financial records. This was accomplished by way of 12 U.S.C. § 3413(i), which provides in pertinent part:

documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

3. Early drafts of the RFPA made it applicable to state, local and federal agencies. *See Nichols v. Council on Judicial Complaints*, 615 P.2d 280, 283 n. 15 (Okla.1980). In the final version which passed, the RFPA only applies to federal agencies. *See* 12 U.S.C. § 3401(3). As a result, bank customers in Alaska must look to Alaska law for protection of their records from state government or from privately-initiated records production process.

Nothing in this chapter (except sections 3415 and 3420 of this title)[4] shall apply to any subpena or court order issued in connection with proceedings before a grand jury, except that a court shall have authority to order a financial institution, on which a grand jury subpoena for customer records has been served, not to notify the customer of the existence of the subpoena or information that has been furnished to the grand jury, under the circumstances and for the period specified and pursuant to the procedures established in section 3409 of this title.

On the other hand, significant restrictions were placed on the use of the financial records. Pursuant to 12 U.S.C. § 3420(a), financial records "shall be returned" to the grand jury, but the manner of their production and use was circumscribed:

> Financial records about a customer obtained from a financial institution pursuant to a subpena issued under the authority of a Federal grand jury—
>
> (1) shall be returned and actually presented to the grand jury unless the volume of such records makes such return and actual presentation impractical in which case the grand jury shall be provided with a description of the contents of the records.;
>
> (2) shall be used only for the purpose of considering whether to issue an indictment or presentment by that grand jury, or of prosecuting a crime for which that indictment or presentment is issued, or for a purpose autho-

rized by rule 6(e) of the Federal Rules of Criminal Procedure;

> (3) shall be destroyed or returned to the financial institution if not used for one of the purposes specified in paragraph (2); and
>
> (4) shall not be maintained, or a description of the contents of such records shall not be maintained by any Government authority other than in the sealed records of the grand jury, unless such record has been used in the prosecution of a crime for which the grand jury issued an indictment or presentment or for a purpose authorized by rule 6(e) of the Federal Rules of Criminal Procedure.

Thus, Congress specifically required production of financial records while setting forth standards for the use, maintenance, return or destruction of the information.

█ Section 3409, referenced in § 3413(i), is also relevant to the dispute raised in this action. As quoted above, § 3413(i) states that pursuant to the procedures established in § 3409, federal courts have the authority to order a financial institution not to notify a customer of the existence of a federal grand jury subpoena or information that has been furnished to the grand jury.[5] A federal court should only issue such a delayed-notification order, however, when the government authority requesting that notice be delayed makes an application demonstrating with reasonable specificity to the court's satisfaction that:

> any other person of its existence. This provision was added to § 3413(i) by way of a 1986 amendment aimed at clarifying the powers of district courts to issue such orders. *See* Pub.L. No. 99–570, 100 Stat. 5053 (1986). Prior to its amendment, several federal courts decided that the RFPA did not provide any authority for delayed-notification orders concerning federal grand jury subpoenas and struggled to find independent grounds upon which to issue them. *See, e.g., In re Grand Jury Subpoena Duces Tecum,* 797 F.2d 676, 680 (8th Cir.), *cert. dismissed,* 479 U.S. 1013, 107 S.Ct. 661, 93 L.Ed.2d 714 (1986); *In re Grand Jury Subpoena Duces Tecum,* 575 F.Supp. 93, 94 (S.D.N.Y.1983).

---

**4.** Section 3415 relates to cost reimbursement, or the payment of fees associated with assembling or providing financial records pertaining to a customer. Section 3420 primarily relates to the presentation and maintenance of financial records provided in response to a grand jury subpoena, and also directs that financial institutions shall not notify customers of disclosure where the grand jury subpoena is served in connection with the investigation of financial crimes.

**5.** In this way, § 3413(i) clarifies the authority of district courts to issue orders commanding a person to whom a subpoena duces tecum is directed not to notify, for a specific period,

(1) the investigation being conducted is within the lawful jurisdiction of the Government authority seeking the financial records;

(2) there is reason to believe that the records being sought are relevant to a legitimate law enforcement inquiry; and

(3) there is reason to believe that such notice will result in—

(A) endangering life or physical safety of any person;

(B) flight from prosecution;

(C) destruction of or tampering with evidence;

(D) intimidation of potential witnesses; or

(E) otherwise seriously jeopardizing an investigation or official proceeding or unduly delaying a trial or ongoing official proceeding to the same extent as the circumstances in the preceeding [sic] subparagraphs.

*See* 12 U.S.C. § 3409(a). Furthermore, the delayed-notification shall not exceed ninety days. *See id.* § 3409(b).

D. *The United States Has Identified No Actual Conflict Between These Authorities*

The United States argues that AS 06.05.175 (presumably in its entirety) is preempted by Rule 17 and the RFPA. The primary authority that the United States relies upon in advancing this argument is *In re Grand Jury Subpoena (Connecticut Savings Bank)*, 481 F.Supp. 833 (D.Conn. 1979). In that case, a bank moved to quash a subpoena served on it requiring the production of certain bank records before a federal grand jury on the ground that service of the subpoena failed to comply with existing Connecticut law. Connecticut law authorized disclosure of financial records pursuant to a lawful subpoena "if such subpoena ... or a certified copy thereof is also served upon the customer whose records are being sought, at least ten days prior to the date on which the records are to be disclosed, provided a court of competent jurisdiction, for good cause, may waive service of such subpoena ... or certified copy thereof, upon such customer[.]" Criminal penalties were provided for bank officers who knowingly and willfully furnished financial records in violation of the Connecticut statute.

After discussing relevant authorities addressing preemption under the Supremacy Clause, the district court concluded that the Congressional intent expressed in enacting the RFPA not to impede legitimate law enforcement investigations "would be frustrated by the application of the state notice and challenge provisions which serve as an obstacle to the accomplishment of the Congressional objective." *See Connecticut Sav. Bank*, 481 F.Supp. at 834. The Connecticut statute was viewed as offending the RFPA in that it imposed a ten-day notice provision, whereas the RFPA specifically exempted grand jury subpoenas from a similar ten-day notice provision. The district court therefore broadly concluded that "[i]nsofar as the Connecticut statute in imposing a notice and challenge procedure would undermine the authority given the grand jury by the federal act," it was in conflict with the RFPA and therefore void under the Supremacy Clause. *See id.* at 835.

The district court in *Connecticut Savings Bank* largely ignored the statutory provision allowing that courts might waive the customer notification obligation. In so doing, the court may have missed an opportunity to reconcile the Connecticut notice provision with the RFPA. It must be remembered, however, that *Connecticut Savings Bank* was decided prior to the 1986 amendment to § 1343(i), during a time at which a majority of federal courts took the view that the RFPA did not provide any authority for federal courts to issue orders compelling banks not to disclose to customers the fact that their financial records had been accessed by a federal grand jury. *See, e.g., In re Grand Jury Subpoena Duces Tecum*, 797 F.2d at 680. In light of the 1986 amendment to § 1343(i), it is now clear that federal district courts may issue delayed-notification

orders if satisfied that the provisions set forth in § 3409 have been met.

Alaska's customer notification provision is similar to the one at issue in *Connecticut Savings Bank* in that it mandates notification to bank customers of a disclosure made pursuant to a grand jury subpoena absent a court order directing that notification not be made. Alaska Statute 06.05.175(b) generally provides that when disclosure of bank records is required or allowed under sections (a)(1) or (a)(2), "the bank shall notify the depositor or customer of the disclosure." However, the statute also provides that "notification may not be made if disclosure is made under a ... court order issued at the behest of a grand jury." Similarly, under the RFPA, financial institutions are generally at liberty to notify customers of federal grand jury subpoenas, so long as a court order has not been secured mandating delayed-notification. *See* 12 U.S.C. § 3413(i). *See also Pleasant v. Lovell*, 876 F.2d 787, 806 (10th Cir.1989) ("[A] bank is not required to notify its customer of a grand jury subpoena. Indeed, as amended in 1986, § 3413(i) now provides that under certain conditions a court may order a bank *not* to disclose to the customer the existence of the grand jury subpoena or the information that the bank provided. *See* 12 U.S.C. § 3409.").

It would therefore appear that Alaska law and the RFPA are consistent in the manner in which they treat and allow for customer notification of grand jury subpoenas. Under either statute, a financial institution is only prohibited from providing customer notification when there is a court order accompanying the grand jury subpoena mandating delayed-notification. Seeing as there is no longer any doubt that federal courts may issue delayed-notification orders, the conflict perceived in *Connecticut Savings Bank* is wholly absent in this action and Alaska's customer notification provision is in fact easily reconcilable with the RFPA.

The other authorities relied upon by the United States in arguing that AS 06.05.175 is preempted by federal law are either not persuasive or only marginally relevant. Significantly, the United States has only cited one other case in which a federal court found that a state law restricting production of financial records was void under the Supremacy Clause, *see In re Grand Jury Subpoena*, 688 F.Supp. 319 (W.D.Tenn.1988), and that decision does not identify specific provisions of the state law in question, or explain how those provisions conflicted with federal law. It can be gleaned from reading the decision that the conflict the district court perceived was between the state law and Federal Rule of Criminal Procedure 17, but it is impossible to decipher whether the Tennessee statute contained a provision similar to AS 06.05.175(a)(2), specifically allowing for disclosure of bank records where required by federal law or regulation.

This Court simply does not perceive a conflict between federal law and AS 06.05.175 on the issue of complying with federal grand jury subpoenas. Pursuant to Rule 17 and the RFPA, financial institutions such as NBA are required to comply with federal grand jury subpoenas regardless of whether those subpoenas are accompanied by court orders. Under well established federal law, banks have no discretion in this regard. If the Alaska statute governing depositor and customer records confidentiality required that financial institutions only disclose customer records when directed to do so by court order, then the statute would conflict with federal law governing the grand jury subpoena process and the state statute would be preempted. Alaska Statute 06.05.175 averts this potential conflict by expressly providing that financial institutions may disclose customers' records when "disclosure is required by federal or state law or regulation." *See* AS 06.05.175(a)(2).

Interestingly, it also appears that subsection (a)(2) relieves financial institutions in Alaska of any obligation to await a court order before releasing financial records in response to a state grand jury subpoena. Rule 17 of the Alaska Rules of Criminal

Procedure is substantially similar to its federal counterpart, and thus it would appear that under state law or regulation there is an equally well established obligation to respond to grand jury subpoenas regardless of whether those subpoenas are accompanied by court orders. *See generally O'Leary v. Superior Court,* 816 P.2d 163 (Alaska 1991); *Surina v. Buckalew,* 629 P.2d 969 (Alaska 1981). If this is so, then of course the 1993 amendments to AS 06.05.175 regarding the need for courts orders accompanying grand jury subpoenas are utterly inconsequential and without effect.

### 3. *It Is Unclear Whether Financial Institutions In Alaska Should Notify Affected Customers Upon Receipt Of Grand Jury Subpoenas.*

Alaska Statute 06.05.175 goes on to address whether customers should be notified of disclosure of their bank records when disclosure is made pursuant to either section (a)(1) or (a)(2). *See* AS 06.05.175(b). The statute directs that banks "shall" notify the depositor of the disclosure under ordinary circumstances, but that "notification may not be made if disclosure is made under a court order issued at the behest of a grand jury." *See id.* As previously discussed, Alaska's customer notice provision does not offend the RFPA. The federal grand jury has ready access to the procedures described in §§ 3413(i) and 3409 of the RFPA and is capable of securing a court order to accompany a subpoena if there is a legitimate and demonstrable need for delayed-notification.[6]

NBA and other financial institutions in Alaska are faced with a difficult decision to make regarding customer notification when served with a grand jury subpoena not accompanied by a court order. While not a matter for this Court to decide, it would appear that financial institutions in Alaska would be well advised to notify

their customers of any disclosure made pursuant to a federal grand jury subpoena not accompanied by a court order directing delayed-notification. A 1981 decision from the District of Colorado is instructive in this regard. *See In re East Nat'l Bank of Denver,* 517 F.Supp. 1061 (D.Col.1981).

The district court in *East National Bank of Denver* was forced to wrestle with diametrically opposed conclusions regarding customers' expectations of privacy as to the records of their bank accounts. On the one hand, a divided United States Supreme Court held in *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), that a bank depositor has no Fourth Amendment expectation of privacy of records of his bank account, while in *Charnes v. DiGiacomo,* 200 Colo. 94, 612 P.2d 1117 (1980), a unanimous Colorado Supreme Court held that there is a state created expectation of privacy of a Colorado depositor's bank records under the Colorado Constitution. Colorado bankers became concerned that in responding to federal grand jury subpoenas they might be liable for disclosing their customers' financial records in violation of an expectation of privacy protected by the Colorado Constitution. In an effort to resolve this dilemma, the banks filed a motion to quash federal grand jury subpoenas.

The district court denied the motion to quash, but in so doing held that banks may, as they choose, notify a customer that his or her bank records have been subpoenaed. *See East Nat'l Bank of Denver,* 517 F.Supp. at 1064–67. The court further indicated that banks would be well advised to consider the fact that there is no sustainable risk of prosecution for obstruction of justice by the United States Attorney for notifying a customer· of a disclosure made pursuant to a grand jury subpoena, whereas not notifying a customer of disclosure pursuant to a subpoena

---

**6.** Despite an invitation from the Court to do so, the parties have not thoroughly considered whether 31 U.S.C. § 5318 preempts the cus-

tomer notification provisions in AS 06.05.175. This Court therefore expresses no opinion on that issue.

might well subject a bank to civil liability. *See id.* at 1067. The district court ultimately concluded that it was for the banks to decide on an ad hoc basis what they wished to do. *See also In re Vescovo Special Grand Jury,* 473 F.Supp. 1335 (C.D.Cal.1979).

Financial institutions in Alaska are presented with a similar dilemma regarding customer notification. The United States Attorney has indicated that he typically would have no objection to banks providing customer notification upon receipt of a federal grand jury subpoena. In those cases in which the United States does oppose customer notification and is able to establish a demonstrable need for confidentiality, it will utilize §§ 3413(i) and 3409 of the RFPA and secure an appropriate delayed-notification order.

## CONCLUSION

Pursuant to Federal Rule of Criminal Procedure 17 and the RFPA, financial institutions such as NBA are obligated to honor subpoenas issued by the federal grand jury regardless of whether the subpoenas are accompanied by court orders. In so doing, they run no risk of offending AS 06.05.175, which specifically allows for the disclosure of bank records where disclosure is required by federal law or regulation.